**UNITED STATES DISTRICT COURT**
**IN THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| PAMELA MONTGOMERY, on behalf of Herself and for the Benefit of All with the Common or General Interest, Any Persons Injured, and All Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>KRAFT FOODS GLOBAL, INC., a Delaware Corporation; and STARBUCKS CORPORATION, a Washington Corporation,<br><br>Defendants | **CLASS ACTION COMPLAINT**<br>**STATE & NATIONWIDE**<br>**REPRESENTATIVE ACTION**<br>**FOR (1) VIOLATION OF MCPA AND**<br>**SIMILARLY WORDED STATE LAWS;**<br>**(2) INNOCENT MISREPRESENTATION;**<br>**(3) BREACH OF WARRANTY;**<br>**(4) BREACH OF CONTRACT**<br>**(5) VIOLATIONS OF THE LANHAM**<br>**ACT, and JURY DEMAND** |

**CLASS ACTION COMPLAINT & JURY DEMAND**

Plaintiff PAMELA MONTGOMERY ("MONTGOMERY" or "Plaintiff,") brings this action against KRAFT FOODS GLOBAL, INC. ("KRAFT") and STARBUCKS CORPORATION ("STARBUCKS") (collectively, "defendants"), on behalf of herself, all others similarly situated and the general public, and alleges upon information and belief, except as to her own actions, and the investigation of counsel, which included, inter alia, investigation, review and analysis of Defendants' press releases, Defendants' websites, web forums, and various news articles, as follows:

**I. OVERVIEW & NATURE OF THE ACTION**

1. This action is brought on behalf of plaintiff individually, as representative of the common or general interest and as class representatives for all others similarly situated nationwide against KRAFT and STARBUCKS to redress defendants' breach of contract; breach of warranty; innocent misrepresentation; unjust enrichment; various violations by defendants of state consumer protection statutes, including, without limitation, the Michigan Consumer

1

33    Protection Act ("MCPA"), MCL 445.903(1)(a) through (cc) and MCL 445.903(b); similarly

34    worded consumer protection laws in effect throughout the numerous states in which defendants

35    marketed and sold the subject products;[1] and 15 U.S.C. §§45(a)(1) and 52(a)(2) (the "FTC Act")

36    which proscribes "unfair and deceptive trade practices," including "false advertisement for the

37    purpose of inducing… the purchase of food, drugs, devices, services or cosmetics;"[2]

38        2.    This action arises from defendants' independent and joint marketing; packaging;

39    sale; and distribution of their KRAFT-"Tassimo" single-serving coffee brewing system and

40    STARBUCKS-"t-cups" coffee portions;

41        3.    For a period of time that, on information and belief, included a number of months

42    spanning from or about January 2010, or earlier, through present, defendants continued

43    marketing, packaging, selling and distributing said brewing system as the single serve brewing

---

[1]    Other state consumer protection laws similar in scope to Mich. Comp. Laws Ann. §445.901 et seq. defendants violated include, without limitation: (2004); Ala. Code §8-19-1 et seq. (2004); Alaska Stat. §45.50.471 et seq. (2004); Ariz. Rev. Stat. Ann §44-1521 et seq. (2004); Ark. Code Ann. §4-88-101 et seq.; Cal. Civ. Code 1770 et seq. (2004); Cal. Bus. & Prof. Code §§17200, 17500, et seq. (2004); Colo. Rev. Stat. §6-1-105 et seq. (2004); Conn. Gen. Stat. Ann. §42-110a et seq. (2004); Del. Code Ann. tit. 6 §2511 et seq. (2004); D.C. Code Ann. §28-3901 et seq. (2004); Fla. Stat. Ann. 501.201 et seq. (2004); Ga. Code Ann. §10-1-372 (2004); Ga. Code Ann. §10-1-393 (2004); Ga. Code Ann. §§10-1-420 (2004); Haw. Rev. Stat. §480-1 et seq. (West 2003); Idaho Code §48-601 et seq. (2004); 815 Ill. Comp. Stat. 505/1, et seq. (2004); Ind. Code Ann. §24-5-0.5-3 (2004); Iowa Code §714.16 (2004); Kan. Stat. Ann. §50-623 et seq. (2004); Ky. Rev. Stat. Ann. §367.170 (2004); La. Rev. Stat. Ann. §51:1405 (West 2004); Me. Rev. Stat. Ann. tit. 5, §205-A et seq. (2004); Md. Code Ann., Com. Law §13-301; et seq. (West 2004); Mass. Gen. Laws ch. 93A, §1 et seq. (2004); Minn. Stat. Ann. §325D.43 et seq. (2004); Minn. Stat. Ann. §325F.68 et seq. (2004); Minn. Stat. Ann. §325F.67 et seq. (2004); Miss. Code Ann. §75-24-1 et seq. (2004); Miss. Code Ann. §97-23-3 (2004); Mo. Ann. Stat. §407.010 et seq. (2004); Mont. Code Ann. §30-14-101 et seq. (2004); Neb. Rev. Stat. §59-1601 et seq. (2004); Nev. Rev. Stat. Ann. §598.0903 et seq. (2003); N.H. Rev. Stat. Ann. §358-A:1 et seq. (2004); N.J. Stat. Ann. §56:8-1 et seq. (2004); N.M. Stat. Ann. §57-12-1 et seq. (2004); N.Y. Gen. Bus. Law §§349 to 350-e (2004); N.C. Gen. Stat. §75-1 et seq. (2004); N.D. Cent. Code §51-15-01 et seq. (2003); N.D. Cent. Code §51-12-01 et seq. (2003); Ohio Rev. Code Ann. §1324.01 et seq. (2003); Okla. Stat. Ann. tit. 15 §751 et seq. (West 2004); Or. Rev. Stat. §646.605 et seq. (2003); 73 Pa. Cons. Stat. §§201-1 et seq. (2004); 3 P.R. Laws Ann. §§341 et seq. (2001); R.I. Gen. Laws §6-13.1-1 et seq. (2003); S.C. Code Ann. §39-5-10 et seq. (2003); S.D. Codified Laws §37-24-1 et seq. (2004); Tenn. Code Ann. §47-18-101 et seq. (2004); Tex. Bus. & Com. Code Ann. §17.41 et seq. (2004); Utah Code Ann. §13-11-1 et seq. (2004); Vt. Stat. Ann. tit. 9 §2453 et seq. (2004); Va. Code Ann. §59.1-196 et seq. (2004); Wash. Rev. Code Ann. §§19.86.010 et seq. (2004); W. Va. Code 46A-6-101 et seq. (2003); Wis. Stat. Ann. §100.18 (2003); and Wyo. Stat. Ann. §40-12-101 et seq. (2003).

[2]    *Note*: While defendants' violations of the FTC Act are probative of the unlawful nature of defendants' false and misleading conduct, plaintiff concedes that the FTC Act may not, in itself, give rise to a private right of action.

2

system for which STARBUCKS coffee portions were available or exclusively available.[3] Specifically, such marketing and packaging included, without limitation: express representations regarding defendants' association, affiliation, and joint offerings on the outermost packaging of the brewing system; and express representations of the same by way of information and materials contained inside the system's outer container. Among the representations and information was defendant STARBUCKS'S widely familiar symbol, logo, and trademark, which defendants printed and displayed prominently on said packaging and materials, and statements that defendants' system afforded use of STARBUCKS single portion brewing cups;

4.    That by their actions as described above defendant defendants used, provided, communicated, or disseminated false and misleading information to plaintiff and similarly situated consumers for reason that while engaging in said activities defendants knew the said joint offerings by and affiliation or association between the KRAFT brewing system and STARBUCKS portion brewing cups was highly uncertain; had been terminated, was in the process of being terminated, or was likely in the immediate and foreseeable future to become terminated, and that such had resulted in or would result in the perpetual unavailability of STARBUCKS portion cups compatible for use with the KRAFT brewing system;[4]

5.    Throughout said period, Defendants understood that in the context of a then-emerging single-serve system consumer coffee market, of considerable importance and

---

[3]    In competition with, and as compared to, defendant KRAFT's sole or dominant competitor in the single serve coffee brewing market, the class of systems and associated single serving cups offered by Keurig/Green Mountain Coffee.

[4]    *See* Kraft Foods Global, Inc. v Starbucks Corporation,  Case No. 11-389-cv (2nd Cir.), wherein defendant KRAFT appealed from the SDNY District Court's order entered on January 31, 2011 denying KRAFT's application for a preliminary injunction. By letter dated November 5, 2010, Defendant-Appellee STARBUCKS notified KRAFT that, effective March 1, 2011, it would terminate the parties' distribution agreement and other related agreements regarding the Tassimo system on the basis that KRAFT had materially breached its obligations under the agreements and failed to cure those breaches. KRAFT sought a preliminary injunction to prevent STARBUCKS from terminating the agreements which the district court denied; *See also,* Email Correspondence between defendants, attached as "**Exhibit A.**"

62    materiality to plaintiff's and similarly situated consumers' decisions to purchase a KRAFT "t-

63    cup" style system, as compared to a competing Keurig "k-cup" style system was what brands of

64    Tassimo-compatible portion-cups would be available to consumers for use with the Tassimo

65    system; and specifically, whether Tassimo-compatible STARBUCKS portion cups would remain

66    available;

67        6.    That despite KRAFT's actual or constructive knowledge that its underlying

68    agreements with STARBUCKS regarding the continued availability of said STARBUCKS t-cups

69    to consumers, KRAFT, and on information and belief, STARBUCKS also, continued to engage

70    in the marketing, packaging, sale and distribution of said brewing system with false information

71    so as to mislead consumers into believing the Tassimo system afforded consumers' the present

72    and continued availability of compatible STARBUCKS portion cups;

73        7.    Among the false and misleading information, advertising, labeling, and other

74    representations defendants made, throughout the subject period of time, they continued to display

75    and sell to consumers Tassimo systems packaged in cartons bearing defendant STARBUCKS'

76    familiar logo and representing that defendant STARBUCKS' portion cups were available and

77    would remain available for use or exclusive use with the Tassimo system;

78        8.    Defendants continued to engage in said conduct for a protracted period of, on

79    information and belief, approximately two (2) years, despite knowing their agreements allowing

80    continued distribution of the STARBUCKS T-cups had terminated or would imminently

81    terminate;

82        9.    That during said period of time, defendants could have, but to maximize their

83    economic and pecuniary interests, did not undertake any actions or efforts to correct the Tassimo

84    system's false and misleading labeling and information; and did not undertake any actions or

4

85  efforts to provide or facilitate notice among retailers or consumers that the Tassimo's packaging,
86  labeling, and marketing was false and misleading in light of the actual status of defendants'
87  dealings and agreements;

88          10.     During said period of time, despite receiving numerous inquiries and other calls
89  for response from consumers and the public requesting clarification of the continued availability
90  of STARBUCKS T-cups, defendants further engaged in the affirmative publication of false and
91  misleading information regarding the then current and prospective KRAFT/STARBUCKS
92  offerings, and actively concealed information known to them at the time in an effort to mislead
93  consumers and the marketplace;

94          11.     That while defendants were engaging in said conduct which they naturally
95  understood would result in the discontinuation of Tassimo-compatible STARBUCKS portion
96  cups, defendant STARBUCKS was contemporaneously engaging in contentious negotiations
97  with defendant KRAFT as well as negotiations intended to result in offerings by STARBUCKS
98  of portioned brewing cups for use with Keurig systems, the Tassimo's system direct competitor
99  in the marketplace, all at the expense of consumers who were still purchasing the Tassimo
100 system under the belief that STARBUCKS brewing cups would be- and for a reasonable time
101 remain available;

102         12.     That on information and belief, the discontinuation of STARBUCKS T-cups was
103 caused, at least in part, by contractual breaches and failures by defendant KRAFT,[5] which
104 KRAFT undertook to maximize its pecuniary and economic interests to the detriment of plaintiff
105 and those numerous other consumers defendants induced to purchase the Tassimo system by
106 falsely representing the present and continued availability of Tassimo-compatible STARBUCKS
107 portion cups;

---

[5]     See Email Correspondence between defendants, attached as "**Exhibit A**."

108   13. That defendant STARBUCKS'S conduct further constituted unfair, deceptive and

109 unlawful competitive and business practices for reason that it consented to, endorsed, and

110 benefited from the joint advertising, labeling, marketing, sales, and distribution in which

111 STARBUCKS engaged with defendant KRAFT, knowing at all relevant times that KRAFT's

112 and Green Mountain Coffee Roasters, Inc.'s proprietary T-cup and K-cup brewing systems

113 existed as a competitive dichotomy in the marketplace.  Defendant STARBUCKS also knew, at

114 all relevant times that: defendants' false and misleading packaging and advertising and

115 concealment of the STARBUCKS/KRAFT dispute and ultimate separation and disassociation;

116 the timing and circumstances surrounding its discontinuation of STARBUCKS' T-cups; and its

117 actions in furtherance of the production of STARBUCKS K-cups would confuse and damage

118 consumers in their selection of and purchase of a T-cup or K-cup system;

119   14. That after defendants knew or had reason to know their agreements concerning

120 the continued distribution of the STARBUCKS T-cups were in dispute; had terminated; or would

121 terminate in the future, defendants concealed the information by failing to correct the packaging

122 of the Tassimo brewing system; by failing to disclose the same to consumers; and by engaging in

123 systemic concealment as regarded its retailers, online sellers, and the consuming public

124 generally, thereby causing and perpetuating the false belief by retailers and the public that

125 defendants' agreements, joint venture, and joint product offerings related to the Tassimo system

126 and STARBUCKS T-cups still existed and would remain in existence prospectively;

127   15. Defendants' conduct as set forth herein above, and more fully below, has caused

128 plaintiff and a great number of similarly situated consumers actual, statutory, and otherwise

129 available damages at law or in equity;

6

130    16.    As a result of wrongful acts and omissions of the defendant in this case, plaintiff
131  and numerous consumers have been exposed to and damaged by what constitutes one of the
132  more historically blatant specimens of consumer confusion and fraud, caused by the deliberate
133  and self-interested actions of defendants;

134                                    **II. THE PARTIES**

135    17.    Plaintiff Pamela Montgomery is a citizen and resident of Michigan, residing in
136  Okemos, Michigan.

137    18.    Defendant KRAFT, being Kraft Foods Global, Inc., is a Delaware corporation
138  with its principal place of business located in Northfield, Illinois.  At all relevant times, KRAFT
139  engaged in, *inter alia*, the promotion, distribution and sale of aforenamed Tassimo consumer
140  goods brewing system; and in connection with its agreements with defendant STARBUCKS,
141  consumer packaged "Starbucks" coffee products, including Starbucks T-cup portioned brewing
142  cups;

143    19.    Defendant STARBUCKS, being Starbucks Corporation, is a Washington
144  corporation with its principal place of business located in Seattle, Washington.  At all relevant
145  times, STARBUCKS engaged in, *inter alia*, the promotion, distribution and sale of its consumer
146  packaged "Starbucks" coffee products, including Starbucks T-cup portioned brewing cups, and
147  engaged in the negotiation of-, performance of-, and varied activities related to certain
148  agreements related to said products with defendant KRAFT;

149
150
151
152

### III. REPRESENTATIVE PLAINTIFF

153

154    20.    Dr. Montgomery purchased her KRAFT Tassimo brewing system after comparing

155  the Tassimo and Keurig systems, based on the false and misleading representations by

156  defendants regarding the KRAFT/STARBUCKS association described herein;

157    21.    After the system was purchased, with time it became increasingly difficult and

158  impossible to find and purchase the Starbucks T-cup portioned brewing cups;

159    22.    Seeking further information regarding the continued availability of the subject

160  product Plaintiff inquired from several sources, including the internet;

161    23.    That local retailers, including, without limitation, Fred Meijer, where Plaintiff's

162  system was purchased, and Walmart Stores, did not and would not refund Tassimo purchases or

163  provide any remedy, and represented throughout the class period they were unable to assure

164  when Starbucks T Cups would again become available or be replenished;

### IV. OTHER PROPOSED MEMBERS' EXPERIENCES

165

166    24.    On information and belief, thousands, tens of thousands, or hundreds of thousands

167  of consumers have suffered the same consumer experience as plaintiff, and thusly were similarly

168  damaged.    Specifically, these consumers, much like plaintiff, selected a upon purchasing

169  defendants' Tassimo brewing system in reliance upon defendants' false and misleading

170  information printed-on and included with the system, that selection of the Tassimo system, as

171  compared to its alternative in the marketplace, the Keurig system, assured customers' availability

172  and use of Starbucks compatible brewing cups;

### V. CLASS ACTION ALLEGATIONS

173

174    25.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf

175  of herself and on behalf of a class;

8

26.     Plaintiff seeks certification of the following:

<u>NATIONAL CLASS</u>

All persons in the United States who purchased or acquired a Tassimo/Starbucks coffee brewing system whose packaging or other information represented that the system was compatible for use with Starbucks brewing cups.

Plaintiff expressly reserves her right to amend this definition if discovery and further investigation reveal that the National Class should be expanded or otherwise modified.

<u>MICHIGAN CLASS</u>

All persons in Michigan who purchased or acquired a Tassimo/Starbucks coffee brewing system whose packaging or other information represented that the system was compatible for use with Starbucks brewing cups.

Plaintiff expressly reserves her right to amend this definition if discovery and further investigation reveal that the Michigan Class should be expanded or otherwise modified.

<u>NUMEROSITY</u>

27.     The National and Michigan Classes (collectively the "Class") are so numerous that the individual joinder of all members, in this or any action, is impracticable.  The exact number or identification The National Class and the District of Columbia Class (collectively the "Class").  The exact number or identification of Class members is presently unknown to Plaintiff, but it is believed that the National Class numbers in the hundreds of thousands, while the Michigan number is at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this class action by a combination of direct mail and public notice, or other means, including through the records possessed by defendants and their retail affiliates;

9

210                                     C<small>OMMONALITY</small>

211       28.    Common questions of fact and law exist as to all members of the Class, which

212 predominate over questions affecting only individual members of the Class. These include, but

213 are not limited to, the following:

214               (a)    whether defendants and their retail affiliates packaged, promoted,

215                       distributed or sold products with false and/or misleading

216                       information;

217               (b)    whether as more fully particularized in the following causes of

218                       action defendants' conduct in marketing, promoting, distributing

219                       and selling said Tassimo/Starbucks system violated federal and/or

220                       Michigan laws;

221               (c)    whether defendant and their retail affiliates engaged in unfair,

222                       unconscionable, or deceptive methods, acts, or practices in the

223                       conduct of trade or commerce or otherwise unlawful business and

224                       trade practices under applicable state and federal law;

225               (d)    whether and to what extent representative plaintiff and the Class

226                       members are entitled to compensatory damages, including actual

227                       damages;

228               (e)    additionally and alternatively, whether and to what extent

229                       representative plaintiff and the Class members are entitled to

230                       compensatory damages, including statutory damages;

231    (f)  additionally and alternatively, whether and to what extent

232       representative plaintiff and Class members are entitled to

233       declaratory, injunctive and/or equitable relief;

234           TYPICALITY

235  29.  Plaintiff's claims are typical of the claims of the Class and all such claims arise

236 out of the same wrongful course of conduct engaged in by defendants;

237           ADEQUACY

238  30.  Plaintiff is an adequate representative of the Class because she is a member of the

239 Class and her interests do not conflict with the interests of the members of the Class she seeks to

240 represent. Plaintiff is represented by experienced and able counsel, and plaintiff's counsel

241 intends to prosecute this action vigorously for the benefit of all Class members. Plaintiff and her

242 counsel can fairly and adequately protect the interests of the members of the Class;

243       PREDOMINANCE AND SUPERIORITY

244  31.  The class action is the best available method for the efficient adjudication of this

245 litigation because individual litigation of the Class members' claims would be impracticable and

246 individual litigation would be unduly burdensome to the courts. Further, individual litigation has

247 the potential to result in inconsistent or contradictory judgments. A class action in this case

248 presents fewer management problems and provides the benefits of single-adjudication,

249 economies of scale, and comprehensive supervision by a single court;

250

251

252

253

# VI. CAUSES OF ACTION

## COUNT I

### Violation of the Michigan Consumer Protection Act
### MCL 45.903 et seq.

32.     Plaintiff repeats and realleges each of the foregoing and following allegations as if fully set forth herein;

33.     The Michigan Consumer Protection Act (hereinafter "MCPA" or the "Act"), at MCL § 45.903 et seq., prohibits unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce;

34.     As for fully set forth herein above and below, defendants who at all relevant times were engaged in trade or commerce, violated the following pertinent provisions of the MCPA, which sections define the types of conduct constituting violations thereunder during the subject time period, being January 2010 through August 2011 or approximately that period:

    (a)   Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    (c)   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

    (h)   Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity in immediate conjunction with the advertised goods or services.

    (n)   Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

    (p)   Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

(q)  Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.

(s)  Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(t)  Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

(u)  Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

(w)  Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction.

(bb)  Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc)  Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

35.  Defendants' conduct as described herein above and below violated MCL § 45.903(3)(1)(a), (c), and (bb) for reason that the aforementioned false and misleading product information caused and resulted in a high probability of confusion or misunderstanding among consumers as to the overall state of affairs surrounding the Tassimo/Starbucks system; and the Tassimo system's and Starbucks T-cups' source, sponsorship, approval, certification or characteristics, namely that such sponsorship, approval, or certification by defendant

13

330    STARBUCKS regarding Starbucks T-cups with respect to defendant KRAFT, or by defendant

331    KRAFT regarding the Tassimo system with respect to defendant STARBUCKS existed and

332    would continue to exist, despite defendants' actual and constructive knowledge to the contrary,

333    which knowledge defendants possessed, on information and belief, from or before October,

334    2010;

335        36.    Defendants' conduct as described herein above and below violated MCL §

336    45.903(3)(1)(h) for reason that from, on information and belief, or about October 2010 through

337    or about August 2011 defendants' independently and jointly advertised and sold the Tassimo

338    system and corresponding Starbucks T-cups including false and misleading information

339    regarding the same despite their actual or constructive knowledge and intent that reasonably

340    expectable public demand for the Starbucks T-cups would not be met;

341        37.    Defendants' conduct as described herein above and below violated MCL §

342    45.903(3)(1)(n) and (t) for reason that defendants caused confusion and misunderstanding among

343    consumers as to their legal obligations, rights, remedies, and benefits in relation to their purchase

344    or other receipt of a Tassimo brewing system;

345        38.    Defendants, in violation of MCL § 45.903(3)(1)(p) and (t) on information and

346    belief, will claim that certain information or notice operated in some way to affect the warranty

347    of merchantability and fitness for use, or other obligation, right, remedy, or benefit to which

348    plaintiff and consumers are entitled, despite not clearly and conspicuously disclosing the same as

349    required;

350        39.    Defendants' conduct as described herein above and below violated MCL §

351    45.903(3)(1)(q) for reason that from, on information and belief, or about October 2010 through

352    or about August 2011 defendants' independently and jointly advertised and sold the Tassimo

14

system and corresponding Starbucks T-cups including the false and misleading information mentioned herein despite their actual or constructive knowledge that the subject of the transactions, that being plaintiff's and consumers' brewing and consumption of coffee using compatible Starbucks T-cups, would not be provided promptly, or at a specified time, or within a reasonable time;

40.   Defendants' conduct as described herein above and below violated MCL § 45.903(3)(1)(s) for reason that defendants independently and jointly advertised, distributed and sold the Tassimo system and corresponding Starbucks T-cups including the false and misleading information mentioned herein while failing to reveal to Plaintiff, Class members, and the public the true status of their relationship, association, agreements and disputes as those related to the continued availability and supply of Starbucks T cups as represented, which information constitutes material facts, the omission of which by defendants tended to and did actually mislead and deceive plaintiff, the Class, and the Public, and which facts could not reasonably have been known or ascertained by plaintiff, the Class, or the Public;

41.   Defendants' conduct as described herein above and below violated MCL § 45.903(3)(1)(u) for reason that upon plaintiff's, Class members' and others' attempts to  rescind, cancel, or otherwise terminate purchases of the Tassimo system in accordance with  defendants' advertisements, representations, and other provisions of law, defendants and defendants' agents did not promptly restore the payments such persons gave for the Tassimo systems;

42.   Defendants' conduct as described herein above and below violated MCL § 45.903(3)(1)(w) for reason that defendants represented to plaintiff, the Class, and to the public, as an inducement for purchasing the Tassimo/Starbucks system, that they would receive the benefit of having available and using compatible Starbucks brewing cups, when in actuality that

376    benefit was not reasonably certain and secure for the subject time period, and in fact the

377    provision of which was, contrary to law, contingent on events and conditions defendants knew

378    had not occurred, consummated, or become assured prior to the systems being purchased;

379         43.    Defendants' conduct as described herein above and below violated MCL §

380    45.903(3)(1)(cc) for reason that Defendants failing to reveal to plaintiff, the Class, and the public

381    facts material to their purchases of the Tassimo/Starbucks system in light of defendants'

382    affirmative and positive representations regarding the state of affairs surrounding the

383    Tassimo/Starbucks system and the continued availability of compatible Starbucks brewing cups,

384    which representations included, but were not limited to, the images and information printed on

385    the Tassimo system's outside carton;

386         44.    Defendants violated the MCPA provisions identified above on each occasion a

387    Tassimo/Starbucks system was sold to plaintiff and/or any member of the Class during the

388    subject time period, as a result of which plaintiff and the Class have suffered actual harm;

389         WHEREFORE, Plaintiff, a person who has suffered damage as a result of defendants'

390    violations of the MCPA, together with Class members, seeks actual and/or compensatory

391    damages; restitution; and equitable relief, including, without limitation, refunds of the payments

392    tendered for the Tassimo systems purchased during the subject period; the costs and expenses of

393    litigation, including attorneys' fees; and any additional and further relief deemed available and

394    appropriate under the circumstances.

## COUNT II

### Innocent Misrepresentation

399         45.    Plaintiff repeats and realleges each of the foregoing and following allegations as if

400    fully set forth herein;

46.     Defendants' representations, as set forth in the preceding paragraphs, were made in connection with the making of a contract between plaintiff and Class members, and defendants;

47.     Plaintiff and the Class would not have entered into the contracts to purchase the Tassimo/Starbucks system had the representations not been made;

48.     Plaintiff and the Class suffered damage and economic losses as a result of entering into the contract, which losses benefited defendants and continue to benefit defendants;

WHEREFORE, Plaintiff together with Class members, seeks actual and/or compensatory damages; restitution; requests their purchases of said Tassimo systems be voided; and further seek equitable relief, including, without limitation, refunds of the payments tendered for the Tassimo systems purchased during the subject period; the costs and expenses of litigation, including attorneys' fees; and any additional and further relief deemed available and appropriate under the circumstances.

## COUNT III

### Breach of Express and Implied Warranties

49.     Plaintiff repeats and realleges each of the foregoing and following allegations as if fully set forth herein;

50.     Defendants are merchants with respect to the subject consumer products pursuant to MCL 440.2104;

51.     The Tassimo/Starbucks systems plaintiff and the Class purchased were subject to implied warranties of merchantability under MCL 440.2314;

52.     Defendants, to induce the sales made certain express warranties and representations to Plaintiff, both orally and in writing (including, but not limited to, the

Tassimo/Starbucks statements contained on the outer container in which the systems were packaged, and which defendants and their affiliates placed on display) and through their advertising and conduct;

53.     These express and implied warranties and representations, and the corresponding impressions they created, included, but were not limited to representations that the Tassimo systems afforded consumers' the present and continued availability of compatible STARBUCKS portion cups for use with the systems, and that the systems was designed for use with Starbucks brewing cups, and that Starbucks brewing cups were designed for use with the Tassimo brewing systems;

54.     That contrary to said warranties and representations, contemporaneous to and following plaintiff's and Class members' purchases, defendants terminated and discontinued supply of Starbucks T cup brewing cups;

55.     As a result, plaintiff and Class members cannot reasonably rely on the systems they purchased for the intended purpose of brewing Starbucks coffee;

56.     Defendants have been unable and/or have refused to correct this problem or to void the purchases within a reasonable time;

57.     As a direct and proximate result of defendants' various breaches of warranty, plaintiff and the Class have suffered damages, including the cost of purchasing the Tassimo/Starbucks system; diminished resale value of the system; interruption in use of the system to brew Starbucks coffee; and the cost of cover including having to purchase Tassimo's competing system, the Keurig type system, together with costs and attorney fees  incurred in attempting to obtain relief from defendants' wrongful conduct;

WHEREFORE, Plaintiff together with Class members, seeks actual and/or compensatory damages; restitution; requests their purchases of said Tassimo systems be voided; and further seek equitable relief, including, without limitation, refunds of the payments tendered for the Tassimo systems purchased during the subject period; the costs and expenses of litigation, including attorneys' fees; and any additional and further relief deemed available and appropriate under the circumstances.

## **COUNT IV**

### **Breach of Contract**

58.     Plaintiff repeats and realleges each of the foregoing and following allegations as if fully set forth herein;

59.     That plaintiff's and Class members' transactions to purchase Tassimo/Starbucks systems constitute valid, enforceable contracts;

60.     Defendants have breached the contracts by failing to provide or ensure reasonable availability and supply of compatible Starbucks brewing cups as represented and promised;

61.     As a result of defendants' breach, plaintiff and Class members have suffered damages;

WHEREFORE, Plaintiff together with Class members, seeks actual and/or compensatory damages; restitution; requests their purchases of said Tassimo systems be voided; and further seek equitable relief, including, without limitation, refunds of the payments tendered for the Tassimo systems purchased during the subject period; the costs and expenses of litigation, including attorneys' fees; and any additional and further relief deemed available and appropriate under the circumstances.

## COUNT V

### Unfair Competition Practices - Violation of the Lanham Act
### 15 U.S.C. § 1125 et seq.

62.     Plaintiff repeats and realleges each of the foregoing and following allegations as if fully set forth herein;

63.     The foregoing acts and conduct by defendants constitute false designation, passing off and false advertising in connection with products and services distributed in interstate commerce, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

64.     Defendants' acts, as set forth above, have caused plaintiff and the Class injury;

WHEREFORE, Plaintiff together with Class members, seeks actual and/or compensatory damages; restitution; requests their purchases of said Tassimo systems be voided; and further seek equitable relief, including, without limitation, refunds of the payments tendered for the Tassimo systems purchased during the subject period; together with any other remedies available under the Lanham Act, including, but not limited to, treble damages; disgorgement of profits; and costs and attorney's fees, and any additional and further relief deemed available and appropriate under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff together with Class members, requests judgment in their favor and against defendants on each and every Count set forth herein in an amount exceeding $5,000,000.00 to satisfy their actual and/or compensatory damages and restitution;  and further seek equitable relief, including, without limitation,  ordering defendants to tender refunds of the payments made for said products; together with any other remedies available under the Lanham Act, including, but not limited to, treble damages; disgorgement of profits; and costs and

attorney's fees, and any additional and further relief deemed available and appropriate under the

circumstances.

## **JURY DEMAND**

Plaintiff and the Class demand trial by jury in all matters so triable.

Respectfully submitted,

Peter W. Macuga II (P28114)
MACUGA, LIDDLE & DUBIN, P.C.
975 East Jefferson Avenue
Detroit, Michigan 48207-3101
Telephone:: (313) 392-0015
Telecopier: (313) 392-0025
*pmacuga@mldclassaction.com*

Tim McCarthy
THE McCARTHY LAW GROUP P.C.
3905 Raleigh Drive
Okemos, Michigan  48864
Telephone: (517) 977-1880
Telecopier: (517) 913-5971
*tim@mccarthy-group.net*