UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PAMELA MONTGOMERY, on behalf of
Herself and for the Benefit of All with the
Common or General Interest, Any Persons
Injured, and All Others Similarly Situated,

            Plaintiffs,

v.

KRAFT FOODS GLOBAL, INC., a
Delaware Corporation; and STARBUCKS
CORPORATION, a Washington Corporation,

            Defendants.

_____/

Case No. 1:12-CV-00149

HON. GORDON J. QUIST

**OPINION**

    Plaintiff, Pamela Montgomery, filed a Complaint in this Court on February 20, 2012.

Plaintiff seeks recovery against Kraft Foods Global, Inc. (now Kraft Foods Group, Inc.) (Kraft) and

Starbucks Corporation (Starbucks) for (1) violation of the Michigan Consumer Protection Act

(MCPA), Mich. Comp. Laws § 445.901 *et seq.*, and similarly worded state laws, (2) breach of

express and implied warranties, and (3) breach of contract.[1,2]

    Each Defendant has filed a motion to dismiss (docket nos. 14, 16) and a renewed motion to

dismiss (docket nos. 33–34) pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court heard

oral argument on the initial motions to dismiss on September 24, 2012.  After careful review of the

_____

[1] The content and page designations herein refer to Plaintiff's First Amended Complaint (docket no. 31), filed October 9, 2012.

[2] Although Plaintiff re-pleaded her innocent misrepresentation claim (Count II) in her First Amended Complaint, Plaintiff has previously conceded that she has abandoned her innocent misrepresentation claim. (Docket no. 22, Page ID 132.)  Plaintiff also acknowledges that she has abandoned her Lanham Act claim (Count V). (*Id.*; Docket no. 30, Page ID 230.)  Finally, Plaintiff concedes, and the Court confirms, that the Federal Trade Commission Act, 15 U.S.C. §§ 45(a)(1) and 52(a)(2), does not give rise to a private right of action before this Court. (*See* Docket no. 31, Page ID 232, n.2.; *see also* 15 U.S.C. § 45(d); *Miles Labs. v. FTC*, 140 F.2d 683, 684–85 (D.C. Cir. 1944)).

record, the Court will grant Defendants' motions to dismiss with regard to the following claims: violation of MCPA relating to Michigan Compiled Laws §§ 445.903(3)(1) (h), (n), (p), (q), (t), (u), and (w), breach of express warranty, breach of implied warranty, and breach of contract. The Court will deny Defendants' motions to dismiss with respect to Plaintiff's claims for violations of MCPA under Michigan Compiled Laws §§ 445.903(3)(1) (a), (c), (s), (bb), and (cc).

## I. FACTUAL BACKGROUND[3]

The Kraft-Tassimo single-serving coffee brewing system (Tassimo) is a consumer coffee machine that prepares one-cup servings of various brands of coffee, tea, hot chocolate, and other drinks. Tassimo is a closed system, meaning the machine utilizes only "T-discs"[4] specifically manufactured for the Tassimo machine, as opposed to loose ground coffee.

Plaintiff alleges that Defendants have disseminated false and misleading information since approximately January 2010 for a period of approximately two years by jointly marketing, packaging, distributing, and selling Tassimo machines in packaging containing the Starbucks logo and statements related to Starbucks coffee T-discs. Among her allegations, Plaintiff contends that Defendants failed to inform consumers that the future affiliation between Defendants was uncertain, misled consumers into believing that Starbucks T-discs would be available for a "reasonable" amount of time into the future (docket no. 31, Page ID 236), and breached a duty to warn consumers that Defendants' affiliation might soon or had already come to an end.

Between 2004 and February 28, 2011, Kraft exclusively developed and promoted Starbucks' consumer packaged goods business, including Starbucks coffee T-discs for Tassimo machines. In

---

[3] The following facts are taken from Plaintiff's First Amended Complaint.

[4] In her original and First Amended Complaints, Plaintiff refers to the serving-size coffee inserts as "t-cups." Defendants refer to the units as "T-discs." Plaintiff later refers to the units as "T-disks" in her Brief in Opposition of Defendant's Motion to Dismiss Class Action Complaint (docket no. 22, Page ID 131). The Court will refer to them as "T-discs."

November 2010, Starbucks made public statements that it was terminating its agreements with Kraft.

On November 29, 2010, Kraft sent a letter to its "Valued Customers" stating that Kraft had initiated

an arbitration proceeding to challenge Starbucks' attempt to terminate their agreements.  (Compl.

Ex. 5, Docket no. 31, Page ID 294.)  Kraft stated that it "reasonably expect[ed] Starbucks to honor

the contract," and assured its customers that Kraft was "continuing to conduct business under the

terms of its contractual arrangements with Starbucks."  (*Id.*)  Kraft further informed its customers

that it continued to represent the Starbucks brand at retail.  On February 28, 2011, Kraft's exclusive

agreement with Starbucks ended.  The terms of the relationship between Kraft and Starbucks

beginning on March 1, 2011, are not detailed in the pleadings.  Moreover, there is no record of

which entity or entities retained control over marketing, packaging, distribution, or sales of existing

Tassimo machines or Starbucks coffee T-discs.

       After comparing brands, Plaintiff purchased her Tassimo from "Fred Meijer," although she

does not allege the exact date of her purchase.  (Compl., Docket no. 31, Page ID 240.)  She claims

that she purchased the Tassimo as a result of the false and misleading representations, including

Starbucks' "widely familiar symbol, logo, and trademark, which defendants jointly marketed,

printed and displayed prominently on said packaging and materials, and statements that defendants'

system afforded exclusive use of [Starbucks] single portion brewing cups."  (Compl., Docket no.

31, Page ID 233.)  After an unspecified amount of time, Plaintiff alleges "it became increasingly

difficult and impossible to find and purchase the Starbucks [T-discs]."  (*Id.* at 239.)  Plaintiff alleges

that Defendants continued to engage in marketing, packaging, distributing, and/or selling Tassimo

machines with the Starbucks logo "for a protracted period of . . . approximately two (2) years" after

January 2010, "despite knowing their agreements allowing continued distribution of the [Starbucks

T-discs] had terminated or would imminently terminate[.]"  (*Id.* at 235.)

## II. STANDARD OF REVIEW

The instant matter before the Court is Defendants' motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 46, 47, 78 S. Ct. 99, 102, 103 (1957)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 556, 127 S. Ct. 1965.

For purposes of a 12(b)(6) motion, the court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion to dismiss for failure to state a claim, courts recognize an exception for documents attached to or referenced in the complaint. "When a court is presented with a

Rule12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

## III.  DISCUSSION

### A.      Michigan Consumer Protection Act

In Count I of Plaintiff's Complaint, Plaintiff alleges that Defendants' conduct violated the following provisions of the MCPA, Mich. Comp. Laws § 445.903(3)(1), by:

(a)     Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c)     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;

(h)     Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity in immediate conjunction with the advertised goods or services;

(n)     Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

(p)     Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed;

(q)     Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided;

(s)     Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

(t)     Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it;

(u)     Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or

persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest;

(w)  Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction;

(bb)  Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

(cc)  Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws § 445.903(3)(1) *et seq*.

To state an MCPA claim, a plaintiff must (1) establish that a defendant is engaged in commerce within the meaning of the Act, § 445.902(1)(g), (2) establish that a defendant's conduct is prohibited by the Act, § 445.903(3), and (3) where individual or class damages are sought, show that the plaintiff is a "person who suffered loss" within the meaning of § 445.911(3).  *See* Mich. Comp. Laws § 445.903(1) *et seq*.  The parties do not dispute that Defendants engaged in commerce within the meaning of the Act.

### 1.  Probability of Confusion of the Source, Sponsorship, Approval, or Certification

Plaintiff first alleges that Defendants violated MCPA § 445.903(3)(1)(a) by providing "false and misleading product information" that "caused and resulted in a high probability of confusion or misunderstanding among consumers as to the overall state of affairs surrounding the Tassimo/Starbucks system."  (Compl., Docket no. 30, Page ID 245.)  Specifically, Plaintiff alleges that Defendants misrepresented that Starbucks' sponsorship, approval, or certification of Starbucks T-discs "existed and would continue to exist, despite defendants' actual and constructive knowledge to the contrary," which Defendants possessed "from or before October, 2010[.]"

6

Defendants respond that Plaintiff's allegations fail to meet the particularity standard of Federal Rule of Civil Procedure 9(b) for fraud claims.  Defendant Starbucks further contends that Starbucks cannot mislead consumers as to its own approval of its products: either Starbucks permitted Kraft to advertise that Starbucks approved, which makes the advertisement accurate and not misleading, or Starbucks did not permit Kraft to advertise Starbucks' approval, "then Starbucks cannot be responsible for Kraft's decision to do otherwise."  (Docket no. 15, Page ID 76.)

First, regarding particularity, Rule 9(b) requires a party to plead "with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  In her Brief in Opposition to Kraft's Motion to Dismiss, Plaintiff agrees that it is proper to construe the provisions of the MCPA "with reference to the common-law tort of fraud."[5]  *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich. App. 178, 182–83, 341 N.W.2d 268 (1983); *but see In re Packaged Ice*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (noting that Rule 9(b) does not apply to all MCPA claims because not all MCPA claims are based on fraud).  The Sixth Circuit reads rules 9(b) liberally, requiring a plaintiff, at a minimum, to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent; and the injury resulting from the fraud."  *See Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993).  Allegations of fraudulent misrepresentation must be made with a sufficient factual basis to support an inference that they were knowingly made. *Id.* at 162.  Rule 9(b) specifically allows a party to allege malice, intent, knowledge, and other conditions of a person's mind "generally" rather than particularly.  Fed. R. Civ. P. 9(b).

---

[5] However, in Plaintiff's Memorandum Opposing Starbucks' Motion to Dismiss, Plaintiff argues that her MCPA claims are not based on fraud, but rather "unambiguous, printed [false] statements conspicuously located on the carton of a product." (Docket no. 23, Page ID 148.)  Therefore, Plaintiff argues that the particularity standard of Federal Rule of Civil Procedure 9(b) does not apply to Plaintiff's MCPA claims.  Alternatively, Plaintiff argues that if the particularity standard applies, she satisfies the rule because she sufficiently pleads an actionable misrepresentation.

Here, Plaintiff states that the misrepresentations occurred from approximately January 2010 to January 2012. The place is the Tassimo packaging on which the misrepresentations were placed and the retail locations at which the packages were sold, presumably including vendor websites. The content of the misrepresentation is the Starbucks logo and statements on the box related to Starbucks coffee T-discs. Plaintiff has further alleged the following facts as the basis of fraud: Defendants misrepresented or failed to disclose material facts about the relationship between Defendants during the period of two years starting approximately January 2010, including the affirmative publication of false or misleading information in the form of the Starbucks logo on Tassimo packaging immediately prior to and after the termination of the Kraft-Starbucks Tassimo/T-disc distribution relationship. (Docket no. 22, Page ID 136.) Plaintiff has also alleged that Kraft, in response to numerous public inquiries, offered misleading information and even "actively concealed" information known to it about the impending termination of the Kraft-Starbucks relationship in order to mislead consumers. (Compl., Docket no. 31, Page ID 235.) Moreover, Plaintiff contends that Defendant Kraft knew of the termination but did not take actions to correct Tassimo's false labeling and statements. Finally, Plaintiff alleges as her resulting injury that she purchased a machine that she "cannot use" to brew Starbucks coffee. (Compl., Docket no. 31, Page ID 250.) In light of these allegations, the Court finds Plaintiff states a claim with sufficient plausibility to satisfy the requirements of Rule 8(a) and with sufficient particularity to satisfy Rule 9(b). *Cf. Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *11 (E.D. Mich. Feb. 16, 2012) (dismissing an MCPA claim for failure to state a claim where plaintiff offered a mere recitation of activities prohibited by MCPA, without identifying the factual basis for the purported violation).

Second, regarding Starbucks' argument that it could not, logically, mislead consumers as to its own approval of its products, the Court disagrees. Because the record lacks contrary evidence

8

of the division of control between Starbucks and Kraft regarding Tassimo and Starbucks T-discs beginning March 1, 2011, and because the Court will presume Plaintiff's allegations to be true for the purpose of the instant motions, the Court finds that it is plausible that the presence of the Starbucks logo could cause a *probability of confusion or misunderstanding* as to the sponsorship or approval of goods. Starbucks does not indicate if or when it withdrew its approval of the presence of its logo or Starbucks-related representations on Tassimo packaging. For example, plausibly, if Starbucks approved of its logo on Tassimo packaging although it knew that its agreement with Kraft had terminated and that Starbucks coffee T-discs would imminently be unavailable or were no longer available, Starbucks may be liable for creating a probability of confusion or misunderstanding as to Starbucks' approval or sponsorship of Tassimos. Therefore, the Court will deny Defendants' motions to dismiss Plaintiff's claim under Mich. Comp. Laws § 445.903(3)(1)(a).

## 2. Representing that Goods Have Uses or Benefits They Do Not Have

Plaintiff alleges Defendants violated MCPA § 445.903(3)(1)(c) by "the aforementioned false and misleading product information," namely Starbucks' logo and statements regarding Starbucks coffee T-discs on Tassimo packaging, "despite defendants' actual and constructive knowledge to the contrary, which knowledge defendants possessed, on information and belief, from or before October 2010[.]" (Compl., Docket no. 31, Page ID 246.)

Defendants similarly respond that Plaintiff fails to plead this claim with particularity, pursuant to Rule 9(b). Fed. R. Civ. P. 9(b). Defendant Starbucks further contends, as above, that Starbucks could not have misled consumers as to its own approval of its products.

As above, the Court finds that Plaintiff has pleaded with sufficient particularity to satisfy Rule 9(b). Because the Starbucks logo could have plausibly caused Plaintiff to make the reasonable assumption that the purchaser of a Tassimo could use it to brew Starbucks coffee, the Plaintiff states a claim that Defendants represented that the Tassimo had uses or benefits that it did not have.

9

Therefore, Defendants' motions to dismiss Plaintiff's claim under Mich. Comp. Laws § 445.903(3)(1)(c) will be denied.

### 3. Intent Not to Supply Reasonable Expectable Demand

Next, Plaintiff contends that Defendants violated MCPA § 445.903(3)(1)(h) by "independently and jointly advertis[ing] and [selling] the Tassimo system and corresponding Starbucks [T-discs] including false and misleading information regarding the same despite their actual or constructive knowledge and intent that reasonably expectable public demand for the Starbucks [T-discs] would not be met." (Compl., Docket no. 31, Page ID 246.)

Defendants respond that subsection (h) is designed to address "door-buster" sales which advertise exceedingly low-price goods without disclosing the limited quantity in conjunction with the advertisement. Defendant Starbucks cites several state cases involving similarly worded consumer protection laws to illustrate the intended application of subsection (h). *See, e.g.*, *Smith v. Baldwin*, 611 S.W.2d 611, 615 (Tex. 1980) (finding a nearly identical statute addresses "bait and switch" advertisements that are designed to attract customers through advertising products at a very low price that the vendor intends to sell in nominal quantities, leading responding consumers to buy a more expensive alternative).

Here, the Court finds that subsection (h) is inapplicable to the facts alleged by Plaintiff. Moreover, Plaintiff fails to identify any precedent holding that a defendant is liable under subsection (h) for discontinuing a product or other facts similar to those alleged here. The Court also notes that Plaintiff failed to specifically respond to Defendants' arguments regarding subsection (h) in either of Plaintiff's briefs in opposition to the motions to dismiss, thereby effectively abandoning the claim. Therefore, the Court will grant Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(h).

### 4. Probability of Confusion as to the Legal Rights, Obligations, or Remedies

Plaintiff next argues that Defendants violated MCPA § 445.903(3)(1)(n) by "conduct as described herein above and below." (Compl., Docket no. 31, Page ID 246.) Plaintiffs do not make any additional allegations or provide explanation as to how Defendants' actions caused "a probability of confusion or of misunderstanding" as to the "legal rights, obligations, or remedies of a party to a transaction."

Defendants respond that Plaintiff's factual allegations are insufficient under Rules 8(a) and 9(b) because Plaintiff's allegations are a mere "formulaic recitation" of the statute. (Docket no. 15, Page ID 81.)

The Court finds that the presence of the Starbucks logo or statements related to Starbucks coffee T-discs alone do not plausibly, without more explanation, cause a probability of confusion or misunderstanding regarding the legal rights, obligations, or remedies of a party to a transaction. Therefore, the Court will grant Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(n).

### 5. Disclaiming or Limiting Implied Warranties

Plaintiff also alleges Defendants violated MCPA § 445.903(3)(1)(p) because defendants "will claim that certain information or notice operated in some way to affect the warranty of merchantability and fitness for use, or other obligation, right, remedy, or benefit to which plaintiff and consumers are entitled, despite not clearly and conspicuously disclosing the same as required[.]" (Compl., Docket no. 31, Page ID 246.) Plaintiff also alleges that local retailers, including Fred Meijer and Walmart Stores, would not refund Tassimo purchases or otherwise provide a remedy. (*Id.* at Page ID 246.) Plaintiff further alleges that Defendants and Defendants' agents did not promptly restore payments to Plaintiff, class members, or others. (*Id.* at Page ID 247.) Plaintiff does not allege that she attempted to return her Tassimo directly to either Defendant.

11

As above, Defendants argue that Plaintiff's allegations are insufficient to satisfy Rules 8(a) and 9(b). Defendant Starbucks further asserts that Plaintiff's claim is deficient because it is a speculative claim that Defendants *will* disclaim an implied warranty in the future. (Docket no. 15, Page ID 81–82.)

The Court agrees that Plaintiff's factual allegations do not state a claim under subsection (p). Even if Plaintiff did allege that Defendants directly refused to issue refunds, Plaintiff does not state a claim that Defendants disclaimed or limited the implied warranties of merchantability or fitness of use as proscribed in subsection (p). As Defendants highlight, Plaintiff merely states that Defendants "will" disclaim a warranty at a future date. The Court does not interpret Defendants' defense in the present lawsuit as an attempt to disclaim a warranty. Rather, as Defendants' responses to Plaintiff's implied warranty claim illustrate, Defendants' position is that they did not breach any warranty. Finally, even if Plaintiff did state a claim in her Complaint, Plaintiff failed to respond to Defendants' arguments regarding subsection (p) in either of her briefs in opposition to the motions to dismiss, effectively abandoning the claim. The Court will therefore grant Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(p).

### 6. Representing that the Subject of a Transaction Will Be Provided Promptly

Plaintiff further contends that Defendants violated MCPA § 445.903(3)(1)(q) by implying through the use of the Starbucks logo and statements related to Starbucks coffee T-discs that compatible Starbucks T-discs would be available despite knowing that T-discs "would not be provided promptly, or at a specified time, or within a reasonable time." (Compl., Docket no. 31, Page ID 246–47.)

As above, Defendants argue that Plaintiff's allegations are insufficient under Rules 8(a) and 9(b). Fed. R. Civ. P. 8(a), 9(b). Defendant Starbucks further argues that the subject of the consumer transaction is the Tassimo, not Starbucks T-Discs. Moreover, Starbucks asserts, subsection (q)

proscribes situations in which a merchant accepts payment for a good but fails to provide the good at the time agreed, which is distinguishable from the present case. *See, e.g.*, *Temborius v. Slatkin*, 157 Mich. Ct. App. 587, 597–98, 403 N.W.2d 821, 827 (1986) (per curiam).

The Court finds that, for the purposes of subsection (q), the Tassimo was the subject of the instant consumer transaction(s), not the Starbucks T-discs. Plaintiff does not allege that Tassimo machines were promised but not provided promptly by Defendants. Therefore, subsection (q) is not applicable to the facts in this case. The Court will grant Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(q).

### 7. Failure to Reveal a Material Fact, Which Tends to Mislead or Deceive Consumer

Plaintiff further alleges that Defendants violated MCPA § 445.903(3)(1)(s) by "independently and jointly" advertising, distributing, and selling Tassimos and corresponding Starbucks coffee T-discs "including the false and misleading information mentioned herein while failing to reveal to Plaintiff, Class members, and the public the true status of their relationship, association, agreements and disputes" as they "related to the continued availability and supply of Starbucks [T-discs] as represented, which information constitutes material facts, the omission of which by defendants tended to and did actually mislead and deceive plaintiff, the Class, and the Public, and which facts could not reasonably have been known or ascertained by plaintiff, the Class, or the Public[.]" (Compl., Docket no. 31, Page ID 247.)

Defendants assert that Plaintiff's allegations are insufficient under Rules 8(a) and 9(b). Fed. R. Civ. P. 8(a), 9(b). Moreover, Defendant Starbucks argues that Plaintiff's allegations are inapplicable to Starbucks because Starbucks never "sold Tassimo brewers or said anything (to anyone, much less to Plaintiff) concerning the future availability of Starbucks T-discs." Therefore,

Starbucks contends that even if Plaintiff's allegations satisfy Rule 9(b), they do not state a claim under Rule 8(a) against Starbucks specifically.

First, regarding particularity, Plaintiff alleges both that Defendant Kraft actively concealed the status of its terminating relationship with Starbucks and that Defendants "independently and jointly" continued to market, package, distribute, and/or sell Tassimo machines in packaging containing the Starbucks logo and statements about Starbucks Coffee T-discs even after the relationship between Defendants had terminated.  As such, the Court finds Plaintiff's factual allegations satisfy the requirements of Rules 8(a) and 9(b).  Fed. R. Civ. P 8(a), 9(b).

Second, regarding Starbucks' argument, Plaintiff alleges that Starbucks and Kraft *jointly* marketed Starbucks' consumer packaged goods.  Plaintiff explicitly and implicitly alleges throughout her Complaint that Starbucks authorized the placement of the Starbucks logo on Tassimo packaging.  (*See, e.g.*, Compl., Docket no. 31, Page ID 233.)  Because the Court must accept Plaintiff's factual allegations as true and construe the complaint in the light most favorable to the Plaintiff, *Gunasekera*, 551 F.3d at 466, Starbucks' attempt to distinguish itself from Kraft for purposes of subsection (s) at this time must be rejected.  Plaintiff has plausibly pleaded that Defendants failed to reveal a material fact—the impending termination or previous termination of the Kraft-Starbucks relationship, or, the imminent unavailability of Starbucks coffee T-discs—despite Defendants' knowledge of the material fact, the omission of which may have misled or deceived consumers into believing Starbucks T-discs would continue to be available and the information could not have reasonably been known by consumers.  Therefore, Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(s) will be denied.

### 8.  Consumer Waiver of a Right, Benefit, or Immunity

Plaintiff also contends that Defendants violated MCPA § 445.903(3)(1)(t) by "conduct as described herein above and below ... for reason that defendants caused confusion and misunderstanding among consumers as to their legal obligations, rights, remedies, and benefits in relation to their purchase or receipt of a Tassimo brewing system." (Compl., Docket no. 31, Page ID 246.)  As with subsection (n), Plaintiffs do not make any additional allegations or provide explanation as to how Defendants' actions caused consumers to *waive or purport to waive a right, benefit or immunity provided by law*.  The Court therefore agrees with Defendants that Plaintiff's allegations do not plausibly, without more explanation, state a claim that Plaintiff entered a transaction in which she waived or purported to waive a right, benefit, or immunity provided by law. Therefore, the Court will grant Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(t).

### 9.  Promptly Restore a Deposit, Down Payment, or Other Payment

Next, Plaintiff alleges Defendants violated MCPA Section 445.903(3)(1)(u) because "upon plaintiff's, Class members' and others' attempts to rescind, cancel, or otherwise terminate purchases of the Tassimo system in accordance with defendants' advertisements, representations, and other provisions of law, defendant and defendants' agents did not promptly restore the payments such persons gave for the Tassimo systems."   (Compl., Docket no. 31, Page ID 247.)

Defendant Kraft argues that Plaintiff fails to state a claim under Rule 8(a) because Plaintiff fails to specifically allege that she attempted to return her product to either Defendant and neither of the local retailers mentioned in the pleadings—Meijer and Walmart—act on behalf of Defendants. Moreover, Starbucks argues Plaintiff fails to identify *any* consumer transaction that was *rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement,*

15

*representation, or provision of law*.  Starbucks argues that subsection (u) "applies when a party agrees (or is otherwise obligated) to refund a deposit or similar payment when a transaction is cancelled, and fails to do so."  (Docket no. 15, Page ID 80.)

The Court finds that subsection (u) does not apply when a party seeks cancellation of a contract, such as the return of a purchased item, as a remedy in a lawsuit.  *See Knobelspiesse v. Wright Ventures, Inc.*, No. 223340, 2002 WL 1308788, at *4 (Mich. Ct. App. June 14, 2002) ("[P]laintiffs ... are seeking rescission *as a remedy*. ... Therefore, because plaintiffs had not, at the time of filing their complaint, rescinded their contract, the trial court properly dismissed plaintiffs' claim under [MCPA] subsection (u), which requires that rescission has already occurred.").  Since Plaintiff does not allege that any consumer transaction between Plaintiff and Defendants was ever rescinded, canceled, or otherwise terminated as a result of Plaintiff's inability to purchase Starbucks T-discs, Plaintiff fails to state a claim.  Therefore, Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(u) will be granted.

### 10.  Rebate, Discount, or Other Benefit as an Inducement for Entering a Transaction

Plaintiffs also allege that Defendants violated MCPA § 445.903(3)(1)(w) because Defendants made false representations—the Starbucks logo and statements on Tassimo packaging related to Starbucks coffee T-discs—to induce Plaintiff and purported class members to purchase Tassimo machines.  Namely, the logo and statements were a statement to consumers that consumers would have the "benefit of having available and using compatible Starbucks [T-discs], when in actuality that benefit was not reasonably certain and secure for the subject time period" and was actually "contrary to law, contingent on events and conditions defendants knew had not occurred, consummated, or [had] become assured prior to the systems being purchased." (Compl., Docket no. 31, Page ID 247–48.)

16

Defendant Kraft first responds that Plaintiff's allegations about the presence of Starbucks' logo and statements about Starbucks coffee T-discs do not amount to a statement to consumers that Starbucks coffee T-discs will continue to be available. Second, Kraft argues that Plaintiff fails to allege that any consumer who purchased a Tassimo was unable *that day* to buy Starbucks coffee T-discs for the Tassimo, so consumers were not denied any benefits made as an inducement to purchase a Tassimo. Third, Defendant Starbucks argues that from the statutory list of "rebate, discount, or other benefit," neither rebate nor discount are applicable to the present facts. Moreover, "other discount" should be construed according to the statutory interpretation canon of *ejusdem generis*: "whereby in a statute in which general words follow a designation of particular subjects, the meaning of the general words will ordinarily be presumed to be and construed as restricted by the particular designation and as including only things of the same kind, class, character or nature as those specifically enumerated." *See, e.g.*, *People v. Smith*, 393 Mich. 432, 436, 225 N.W.2d 165, 166 (1975). Therefore, Starbucks argues, the provision's reference to "another benefit" should be construed to include benefits similar to a rebate or discount, not the benefit of brewing a certain brand of coffee. Finally, Starbucks contends that even if some "other benefit" were used to induce a consumer to purchase a Tassimo, there was no representation that the benefit would be available perpetually.

The Court agrees that the "other benefits" anticipated by subdivision (w) do not include the more abstract benefit of use of a coffee machine to brew a specific brand of coffee. Therefore, because Defendants did not represent that Plaintiff would receive a rebate, discount, or other similar benefit as an inducement to purchase a Tassimo, the Court will grant Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(w).

### 11.  Representation of a Material Fact

Plaintiff further alleges that Defendants violated MCPA § 445.903(3)(1)(bb) by displaying Starbucks' logo and statements related to Starbucks coffee T-discs on Tassimo packaging.  Plaintiff alleges the logo and statements "caused and resulted in a high probability of confusion or misunderstanding among consumers as to the overall state of affairs surrounding the Tassimo-Starbucks system," including that the Kraft-Starbucks relationship "existed and would continue to exist, despite defendants' actual and constructive knowledge to the contrary ... possessed ... from or before October, 2010." (Compl., Docket no. 31, Page ID 245–46.)

Defendant Starbucks asserts the same arguments in response to Plaintiff's claims under subsections (s), (bb), and (cc): Plaintiff fails to allege her claims with particularity, Fed. R. Civ. P. 9(b), and Starbucks made no representations because Kraft, not Starbucks, distributed Tassimos with the Starbucks logo.

As with subsection (s), because Plaintiff sufficiently alleges the time, place, and content of the misrepresentations, and further alleges generally a fraudulent scheme, fraudulent intent, and injury, the Court finds Plaintiff satisfies Rule 9(b).[6]  Additionally, the Court finds unavailing Starbucks' attempt to distinguish itself from Kraft in this context.  For purposes of a 12(b)(6) motion, the Court assumes that plausible facts alleged by Plaintiff are true.  *See Twombly*, 550 U.S. at 553, 127 S. Ct. at 1963.  The allegations before the Court plausibly suggest that Kraft did not have unilateral control over the placement of Starbucks' logo or statements about Starbucks coffee T-discs on Tassimo packaging.  Thus, the Plaintiff alleges a claim that the Starbucks logo or statements on Tassimo packaging was a representation or statement of fact material to a transaction such that

---

[6] *See supra* note 5.  Plaintiff does not fully concede that her MCPA claims are based on fraud.  (Docket no. 23, Page ID 148.)

a person could reasonably believe the represented or suggested state of affairs differed from reality. Defendants' motions to dismiss Plaintiff's claim under M.C.L. § 445.903(3)(1)(bb) will therefore be denied.

### 12. Failure to Disclose Material Facts

Plaintiff's final MCPA claim is that Defendants violated § 445.903(3)(1)(cc) by "failing to reveal to plaintiff, the Class, and the public facts material to their purchases of the Tassimo/Starbucks system in light of defendants' affirmative and positive representations regarding the state of affairs surrounding the Tassimo/Starbucks system and the continued availability of compatible Starbucks [T-discs], which representations included, but were not limited to, the images and information printed on the Tassimo system's outside carton." (Compl., Docket no. 31, Page ID 248.) Plaintiff also alleges that Defendants "actively concealed" from the public, despite "numerous inquiries and other calls for response from consumers and the public requesting clarification of the continued availability of [T-discs]" information "known to them at the time in an effort to mislead consumers and the marketplace." (*Id.* at 235.) In support of Plaintiff's claim, she attaches a letter from Kraft, which states:

> Today, Kraft Foods announced that it initiated an arbitration proceeding to challenge Starbucks attempt to independently end the agreement under which Kraft Foods has successfully built Starbucks retail grocery coffee business.
>
> Kraft Foods and Starbucks entered into a contract that remains in effect indefinitely, subject to certain limitations and protections. Kraft Foods reasonably expects Starbucks to honor the contract. Let me assure you that Kraft Foods is continuing to conduct business under the terms of its contractual arrangements with Starbucks ....
>
> Until there is resolution to this situation, the Kraft Foods Sales team continues to represent the Starbucks brand at retail. If you have any questions, please contact your Kraft Foods Sales representative.

(Compl. Ex. 5.) Neither party states when the arbitration between Starbucks and Kraft ended.

19

However, Plaintiff alleges that although Defendants "knew or had reason to know their agreements concerning the continued distribution of [Starbucks T-discs] were in dispute; had terminated; or would terminate in the future, defendants concealed the information by failing to correct the packaging of the Tassimo brewing system; by failing to disclose the same to consumers; and by engaging in systemic concealment as regarded its retailers, online sellers, and the consuming public." (Compl., Docket no. 31, Page ID 237.) Additionally, Plaintiff attaches communications between Kraft and Starbucks, (*id.*, Exs. 1, 3, and 4), showing that the relationship between Defendants had deteriorated and then ended.

In response to Plaintiff's claim, Defendants assert Plaintiff's allegations are insufficient to state a claim under Rules 8(a) and 9(b). Starbucks also attempts to distinguish itself from Kraft because it claims Starbucks never sold or distributed Tassimo brewers.

As above, the Court finds Plaintiff's allegations sufficiently state a time, place, content of the misrepresentation, a fraudulent scheme, fraudulent intent, and injury. *See Coffey*, 2 F.3d at 161–62. Moreover, in light of the facts alleged and for purposes of the instant motion, the Court disagrees that Starbucks is distinguishable from Kraft with respect to Plaintiff's subdivision (cc) claim. Therefore, the Court will deny Defendants' motions to dismiss Plaintiff's claim under MCPA § 445.903(3)(1)(cc).

In summary, Defendants' motions to dismiss Plaintiff's claims under MCPA §§ 445.903(3)(1)(a), (c), (s), (bb), and (cc) will be denied. Defendant's motions to dismiss Plaintiff's claims under MCPA § 445.903(3)(1)(h), (n), (p), (q), (t), (u), and (w) will be granted.

## B.    Breach of Express and Implied Warranties

Plaintiff next alleges the Tassimos that she and purported class members purchased are subject to express and implied warranties as provided in Michigan Compiled Laws § 440.2313 *et seq*.

### 1. Express Warranty

Under the Uniform Commercial Code (UCC), "an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Mich. Comp. Laws § 440.2313(1)(a). It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific intention to make a warranty. *Id.* § 440.2313(2). However, a mere affirmation of the value of goods or a statement of the seller's opinion or commendation of goods generally does not create a warranty. *Id.*

In order to prevail on an express warranty claim, a plaintiff must establish that the plaintiff and defendant were in privity of contract. *See, e.g.*, *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 284 Mich. App. 617, 638, 774 N.W.2d 332, 344 (2009). The absence of privity of contract requires dismissal of a claim for breach of express warranty. *See Downriver Internists v. Harris Corp.*, 929 F.2d 1147, 1150 (6th Cir. 1991) (finding that the plaintiff was neither a party to the disputed contracts nor a third-party beneficiary under controlling state laws and, therefore, did not have rights under contract or express warranty theories); *Bark River Culvert & Equip. Co. v. Northern Land & Lumber Co.*, No. 206511, 1999 WL 33433540, at *2 (Mich. Ct. App. Oct. 29, 1999) (per curiam) ("[T]he warranty is unenforceable against a third-party defendant because there was no privity of contract"). Under Michigan law, no privity of contract exists between a consumer, who buys from a retailer, and the manufacturer who has not sold a product directly to the consumer. *See Gernhardt v. Winnebago Indus.*, No. 03-73917, 2003 WL 23976324, at *4 (E.D. Mich. Dec. 30, 2003) ("[A]n express warranty running from a remote manufacturer to a consumer does not create the requisite contractual privity."). However, an intended third-party beneficiary is in privity of contact with the original parties for purposes of an express warranty. *See* Mich. Comp. Laws § 600.1405(1).

When determining whether the parties to a contract intended to create a third-party beneficiary, a court should examine the contract using an objective standard.  *Dynamic Const. Co. v. Barton Malow Co.*, 214 Mich. App. 425, 427–28, 543 N.W.2d 31, 33 (1995) (per curiam) (citing *Kammer Asphalt Paving Co. v. East China Twp. Schools*, 443 Mich. 176, 189, 504 N.W.2d 635, 642 (1993) and *Arrow Sheet Metal Works, Inc. v. Bryant & Detwiler Co.*, 338 Mich. 68, 79–80, 61 N.W.2d 125, 131 (1953)).  Only intended, rather than incidental, third-party beneficiaries may sue when a contractual promise in their favor has been breached.  *Kisiel v. Holz*, 272 Mich. App. 168, 170, 725 N.W.2d 67, 69 (2006); *see also Dynamic*, 214 Mich. App. at 428, 543 N.W.2d at 33 (holding that a third party could not maintain an action upon a contract merely because he would receive a benefit from the performance or because he was injured by the breach thereof).  Under Michigan law, a third party for whose benefit a promise was made in a contract may enforce that promise if he or she can establish that the promisor "has undertaken to give or to do something directly to or for said person."  Mich. Comp. Laws § 600.1405(1); *see also Brunsell v. City of Zeeland*, 467 Mich. 293, 297, 651 N.W.2d 388, 391 (2002) (observing that the plain language of § 600.1405 reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has undertaken to give or to do or refrain from doing something directly to or for said person does that person have a claim).

In the present case, Plaintiff argues that Defendants made affirmations of fact or promise regarding the ability of Tassimo systems to brew Starbucks coffee, and that Starbucks coffee T-discs would be available for a reasonable period of time in the future.  The parties do not dispute that privity of contract is required for Plaintiff to state a claim for breach of an express warranty.  Plaintiff claims that she is in privity of contract with Defendants because, as a consumer, she was a third-party beneficiary to the agreement between Defendants regarding Tassimo and Starbucks

coffee T-discs. Plaintiff argues that Defendants intended consumers to have the exclusive benefit of using their Tassimos to brew Starbucks coffee. In fact, Plaintiff asserts that Plaintiff and purported class members were the "only" beneficiaries of the Starbucks-Kraft agreement, and by purchasing Tassimos, they "received exclusive rights to purchase Starbucks coffee for their Tassimo[s]." (Docket no. 22, Page ID 138, 142.)

Defendants argue that the alleged misrepresentations do not constitute affirmations of fact or promises that Starbucks T-discs would "remain available into the future" because any representations related solely to the Tassimo itself. (Docket no. 15, Page ID 86.) Defendant Starbucks equates Plaintiff's argument to a purported warranty that replacement parts would remain available into the future or the cost of supplies for a product would remain low, which courts have rejected. (Docket no. 15, Page ID 86–87.) Defendants finally argue that Plaintiff was not an intended beneficiary and therefore lacks privity of contract with Defendants.

Although Plaintiff claims Defendants intended her to benefit from having "a right to exclusively purchase Starbucks coffee for [her] Tassimo machine," the Court finds this is insufficient to confer third-party beneficiary status. Plaintiff's allegations fail to show that Defendants intended in entering their contract to directly benefit Plaintiff, nor that Defendants undertook to do something directly to or for Plaintiff. As a result, Plaintiff merely alleges that she is a third-party beneficiary, which does not meet the required plausibility standard. *See Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974 (The complaint must contain "enough facts to state a claim to relief that is plausible on its face"); *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants is liable for the misconduct alleged."). Therefore, Plaintiff's claim for breach of express warranty will be dismissed.

23

### 2.  Implied Warranty

Plaintiff further alleges that Defendants breached the implied warranty of merchantability. (Compl., Docket no. 31, Page ID 249.)  Plaintiff does not allege breach of any warranty of fitness for a particular use.  Michigan Compiled Laws § 440.2314 governs implied warranties,

> (1) Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ....
>
> (2) Goods to be merchantable must be at least such as
>
> > (a) pass without objection in the trade under the contract description; and
> >
> > (b) in the case of fungible goods, are of fair average quality within the description; and
> >
> > (c) are fit for the ordinary purposes for which such goods are used; and
> >
> > (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all unites involved; and
> >
> > (e) are adequately contained, packaged, and labeled as the agreement may require; and
> >
> > (f) conform to the promises or affirmations of fact made on the container or label if any.

Mich. Comp. Laws § 440.2314.  These provisions are not an exhaustive list of attributes of merchantability.  *See id.* at UCC cmt. 6.  To establish a prima facie case of breach of implied warranty,

> [A] plaintiff must show that goods were defective when they left the possession of the manufacturer or seller.  Under implied warranty theory, a defect is established by proof that a product is not reasonably fit for its intended, anticipated or reasonably foreseeable use.  Merchantable is not a synonym for perfect.  The warranty of merchantability is that goods are of average quality in the industry ....  As to goods accepted, the burden is on the buyer to establish any claimed breach of warranty.

*Computer Network, Inc. v. AM Gen. Corp.*, 265 Mich. App. 309, 316–17, 696 N.W.2d 49, 56 (2005) (citing *Guaranteed Constr. Co. v. Gold Bond Prods.*, 153 Mich. App. 385, 392–93, 395 N.W.2d 332,

336 (1986)).  Under Michigan law, privity of contract is not required for implied warranty claims. *Pack v. Damon Corp.*, 434 F.3d 810, 818 (6th Cir. 2006); *Farley v. Country Coach, Inc.*, 403 Fed. App'x 973, 977 (6th Cir. 2010).[7]

Plaintiff alleges that because she "cannot use" her Tassimo to brew Starbucks coffee, Defendants have breached an implied warranty under § 440.2314.  (Compl., Docket no. 31, Page ID 250.)  Plaintiff further alleges that because Starbucks coffee T-discs were difficult to find and, later, unavailable, Defendants have breached an implied warranty.  Plaintiff does not specifically allege which subsections of § 440.2314 Defendants violated.

Defendants argue that the Tassimo machines purchased by Plaintiff and proposed class members were capable of brewing single-serving coffee T-discs, including Starbucks coffee and other brands, as well as other hot beverages.  Therefore, Defendants argue that the Tassimo machines did not fail in their "ordinary purpose for which the system was designed to be used." (Docket no. 25, Page ID 222.)  On that basis, Defendants contend, "the product was clearly merchantable."  (*Id.*)  Defendants further emphasize that Plaintiff has not alleged that she was unable to brew Starbucks coffee T-discs on the date she purchased her Tassimo.  Rather, Defendants contend, Plaintiff's complaint is only that she is now unable to obtain Starbucks coffee T-discs, not that her Tassimo is unfit to brew any T-discs.

Although Plaintiff does not allege the specific subsections of § 440.2314 that Defendants violated, the Court finds two provisions applicable to the alleged facts.  First, subsection (2)(c) states that "[g]oods to be merchantable must be at least such as ... are fit for the ordinary purposes for which such goods are used[.]" Second, subsection (2)(f) requires goods to "conform to the promises or affirmations of fact made on the container or label if any."  *Id.*

---

[7] The Court acknowledges Defendant Kraft's footnote regarding the current state of Michigan case law on privity of contract for implied warranties.  (*See* Docket no. 17, Page ID 118 n.7.)

### a. Fit for Ordinary Purposes

Goods are typically not fit for the ordinary purposes when they (1) are completely useless, not fit for any purpose, (2) are not fit for the expected or obvious purpose, (3) break as a result of an early use for the ordinary purposes intended or expected, (4) need frequent or extensive repairs, or (5) are unsafe for use in a normal manner. *See* Am. L. Prod. Liab. 3d § 20.14 (2012) (citations omitted). Merchantability requires that a product conform to its ordinary and intended use; it does not impose a general requirement that goods precisely fulfill the expectations of the buyer. *See AM Gen. Corp.*, 265 Mich. App. at 317, 696 N.W.2d at 56.

Another federal court has recently considered an implied warranty claim similar to Plaintiff's. In *Green v. Green Mountain Coffee Roasters, Inc.*, the court held that a plaintiff failed to state an implied warranty claim where plaintiff's single-serving coffee brewer failed to brew the exact amount of coffee advertised. 279 F.R.D. 275, 283 (D. N.J. 2011). The court found that the "general purpose" of the brewer was to brew hot beverages. *Id.* Although the defendants may have advertised that the machines would brew a specific amount, the judge reasoned that the advertisement did not "transform the 'general' purpose." *Id.* (citing *Lieberson v. Johnson & Johnson*, ---- F. Supp. 2d ----, 2011 WL 4414214, at *8 (2011)). Since Plaintiff did not allege that the brewer was inoperable, such as failing to brew coffee at all, the complaint failed to state a claim. *Id.* (citing *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. No. 10-846, 2011 WL 2976839, at *22–23 (D. N.J. July 21, 2011)) ("[Plaintiff] has not sufficiently alleged that his brewer was unfit for its ordinary purpose of brewing beverages *at the time of purchase*.") (emphasis added); *Anderson v. Chrysler Corp.*, 184 W. Va. 641, 646, 403 S.E.2d 189, 194 (1991) (finding a plaintiff must present evidence, either direct or circumstantial, of a defect or malfunction to prove a breach of implied warranty claim).

In the present case, Plaintiff does not allege that her Tassimo is defective in brewing Starbucks coffee or other T-discs. Moreover, Plaintiff does not allege that she was unable to brew Starbucks coffee or other T-discs at the time of her purchase. Rather, Plaintiff alleges that the unavailability of Starbucks coffee T-discs makes it impossible for her to brew Starbucks coffee. Similar to the court in *Green*, the Court finds that the unavailability of Starbucks coffee T-discs does not "transform the general purpose" of the brewer, and therefore does not state a claim that the brewer is unfit for its ordinary purpose.

### b. Conformity with Promises or Affirmations on Container or Label

Plaintiff alleges that "statements contained on the outer container in which [Tassimos] were packaged, and which defendants and their affiliates placed on display" and Defendants' "advertising and conduct" breach the implied warranty of merchantability. At no point in her complaint does Plaintiff quote or otherwise detail the contents of the statements contained on the outer Tassimo container. Plaintiff does, however, allege that the "statements" on the container were false "so as to mislead consumers into believing the Tassimo system afforded consumers the present and continued availability of compatible [Starbucks T-discs]." (Compl., Docket no. 31, Page ID 234.)

Defendants respond that Plaintiff has failed to allege that her Tassimo was defective or ever "failed to perform ... in its intended and anticipated way." (Docket no. 17, Page ID 119.)

As outlined above, Michigan Compiled Laws § 440.2314 governs implied warranties. To be merchantable, at a minimum, goods must "conform to the promises or affirmations of fact made on the container or label if any." Mich. Comp. Laws § 440.2314(2)(c).

Although Plaintiff alleges that the "statements" on Tassimo containers misled consumers into believing Starbucks T-discs would continue to be available, Plaintiff does not allege that the container made any promise or affirmation about the continued availability of Starbucks T-discs. Absent specific factual allegations regarding the content of the "statements" on Tassimo containers,

the Court finds it implausible that the container made a promise or an affirmation of fact that Starbucks T-discs would continue to be available. *See Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974 (The complaint must contain "enough facts to state a claim to relief that is plausible on its face"); *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants is liable for the misconduct alleged."). Therefore, Plaintiff fails to state a claim of breach of the implied warranty of merchantability.

## C.     Breach of Contract

Finally, Plaintiff alleges that her and purported class members' "transactions to purchase [Tassimos] constitute valid, enforceable contracts." (Compl., Docket no. 31, Page ID 251.) Plaintiff argues that Defendants breached the contracts by failing to "provide or ensure a reasonable supply and availability of compatible Starbucks [coffee T-discs]." (*Id.*)

Defendants respond that Plaintiff's breach of contract claim must fail because Plaintiff and Defendants were not in privity of contract.

Contractual privity is an essential element of a breach of contract claim under Michigan law. *See Downriver Internists*, 929 F.2d at 1149 (citing *Nat'l Sand, Inc. v. Nagel Constr., Inc.*, 182 Mich. App. 327, 331, 451 N.W.2d 618, 620 (1990)). No privity of contract exists between a consumer, who buys from a retailer, and a manufacturer who has not sold directly to the consumer. *See Gernhardt*, 2003 WL 23976324 at *4 (finding plaintiffs, who purchased a vehicle from a dealer, failed to establish contractual privity with the original manufacturer.).

The parties do not dispute that privity of contract is required for Plaintiff's breach of contract claim. Rather, Plaintiff claims she has privity as a third-party beneficiary. However, as with Plaintiff's express warranty claim, the Court finds Plaintiff lacks third-party beneficiary status. *See,*

*e.g.*, *Kisiel v. Holz*, 272 Mich. App. 168, 170, 725 N.W.2d 67, 69 (2006); *see also Dynamic*, 214 Mich. App. at 428, 543 N.W.2d at 33 (holding that a third party could not maintain an action upon a contract merely because he would receive a benefit from the performance or because he was injured by the breach thereof).  A third party for whose benefit a promise was made in a contract may enforce that promise if he or she can establish that the promisor "has undertaken to give or to do something directly to or for said person."  Mich. Comp. Laws § 600.1405(1); *see also Brunsell v. City of Zeeland*, 467 Mich. 293, 297, 651 N.W.2d 388, 391 (2002) (observing that the plain language of § 600.1405 reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has undertaken to give or to do or refrain from doing something directly to or for said person).  Since Plaintiff states that she purchased her Tassimo from "Fred Meijer,"  (Compl., Docket no. 31, Page ID 240), and fails to allege that Defendants have *undertaken to give or do something directly to or for her*, Plaintiff lacks privity of contract with Defendants.  As a result, Defendants' motions to dismiss Plaintiff's claim for breach of contract will be granted.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted with regard to Plaintiff's claims for MCPA violations under Michigan Compiled Laws §§ 445.903(3)(1)(h), (n), (p), (q), (t), (u), and (w), breach of express warranty, breach of implied warranty, and breach of contract.  Defendants' motions to dismiss will be denied as to Plaintiff's claims for violations of the MCPA under Michigan Compiled Laws §§ 445.903(3)(1)(a), (c), (s), (bb), and (cc).

An Order consistent with this Opinion will be entered.

Dated:  December 6, 2012                    _____/s/ Gordon J. Quist_____
                                                            GORDON J. QUIST
                                                  UNITED STATES DISTRICT JUDGE