***REDACTED – FOR PUBLIC INSPECTION***

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| PAMELLA MONTGOMERY, on behalf of Herself and for the Benefit of All with the Common or General Interest, Any Persons Injured, and All Others Similarly Situated, | ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 1:12-cv-00149 |
| | ) | |
| v. | ) | |
| | ) | |
| KRAFT FOODS GLOBAL, INC., a Delaware Corporation; and STARBUCKS CORPORATION, a Washington Corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## STARBUCKS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Edward P. Perdue (P55888)
DICKINSON WRIGHT PLLC
200 Ottawa Avenue, N.W.
Suite 1000
Grand Rapids, Michigan 49503-2427
Tel: 616-458-1300
Fax: 616-458-6753

Aaron M. Panner
Wan J. Kim
Caitlin S. Hall
KELLOGG, HUBER, HANSEN,
   TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: 202-326-7900
Fax: 202-326-7999

*Attorneys for Starbucks Corporation*

December 20, 2013

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

BACKGROUND ................................................................................................... 1

ARGUMENT ........................................................................................................ 3

I.     The Proposed Class Members' Claims Raise Numerous Issues That Can
Only Be Addressed On An Individual Basis ....................................................... 4

       A.     Plaintiff Cannot Prove the Making of a False Statement by
Defendants Through Common Evidence ................................................ 5

       B.     Plaintiff Cannot Prove Reliance Through Common Evidence ............................. 6

       C.     Plaintiff Cannot Prove Materiality Through Common Evidence ......................... 12

       D.     Plaintiff Cannot Prove Injury Through Common Evidence ................................. 12

       E.     Plaintiff Cannot Prove Damages Through Common Evidence ............................ 14

       F.     Plaintiff Cannot Demonstrate the Applicability of the MCPA
Through Common Evidence ................................................................ 17

II.     Plaintiff's Longstanding Relationship With Mr. McCarthy Requires One
Or Both To Be Denied Appointment As A Class Representative ..................... 18

CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................3

*Cardizem CD Antitrust Litig., In re*, 200 F.R.D. 326 (E.D. Mich. 2001) ......................................1

*Compressor Eng'g Corp. v. Manufacturers Fin. Corp.*, 292 F.R.D. 433
(E.D. Mich. 2013) ..........................................................................................................9, 17

*Discovery Zone Sec. Litig., In re*, 169 F.R.D. 104 (N.D. Ill. 1996).........................................18, 19

*Dix v. American Bankers Life Assurance Co. of Fla.*, 429 Mich. 410
(1987) ..........................................................................................................................7, 11

*Edwards v. Cape to Cairo, L.L.C.*, 2010 WL 986502 (Mich. Ct. App.
Mar. 18, 2010) ....................................................................................................................17

*IMAX Sec. Litig., In re*, 272 F.R.D. 138 (S.D.N.Y. 2010) .....................................................18, 19

*Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987)..........................................19, 20

*Klein v. Henry S. Miller Residential Servs., Inc.*, 82 F.R.D. 6 (N.D. Tex. 1978)..........................21

*Kussy v. Home Depot U.S.A., Inc.*, 2006 WL 3447146 (E.D. Mich.
Nov. 28, 2006) ....................................................................................................................12, 13

*Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412 (E.D. Mich. 2013)...............................18

*Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178 (1983) ........................................4, 12, 15

*Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459 (Mich. Ct. App. 1994).....................................13

*OnStar Contract Litig., In re*, 278 F.R.D. 352 (E.D. Mich. 2011) ...................................... *passim*

*Papin v. Demski*, 17 Mich. App. 151 (1969) ..........................................................................12

*Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977) .......................................................19

*Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500
(W.D. Mich. 1998).............................................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................3, 7, 8, 11, 17

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., In re*,
722 F.3d 838 (6th Cir. 2013) ...........................................................................................13

*Zine v. Chrysler Corp.*, 236 Mich. App. 261 (1999) .......................................................4, 12, 13, 17

*Zlotnick v. TIE Communications, Inc.*, 123 F.R.D. 189 (E.D. Pa. 1988).......................................19

## STATUTES AND RULES

Michigan Compiled Laws:

§ 445.903(1)(a) ...................................................................................................2

§ 445.903(1)(c) .............................................................................................2, 4, 7

§ 445.903(1)(s)..............................................................................................2, 4, 7

§ 445.903(1)(bb)............................................................................................2, 4, 7

§ 445.903(1)(cc) ............................................................................................2, 4, 7

§ 445.911(2).........................................................................................................15

§ 445.911(3).........................................................................................................15

Fed. R. Civ. P. 23...........................................................................................3, 7, 13

Fed. R. Civ. P. 23(a) .............................................................................................3, 4

Fed. R. Civ. P. 23(a)(4).........................................................................................4, 18

Fed. R. Civ. P. 23(b)(3)...........................................................................................3, 7

Fed. R. Civ. P. 30(b)(6)..............................................................................................5

## OTHER AUTHORITIES

5 James Wm. Moore et al., *Moore's Federal Practice* (3d ed. 1999) ...........................................19

To justify class certification, Plaintiff must show that a dispute involving thousands of individual consumers can be fairly resolved in a single proceeding. To do so, she must demonstrate that "the matters in dispute . . . are susceptible of common proof equally applicable to all class members." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (internal quotation marks omitted). Plaintiff has not met that burden, and cannot meet it. The Court should deny the motion.

## BACKGROUND

This suit arises out of Plaintiff's purchase of a Kraft Tassimo Hot Beverage System (a "brewer") – a machine that prepares one-cup servings of espresso, coffee, tea, hot chocolate, and a variety of milk-based coffee beverages, including cappuccinos and lattes – in November 2011. Response to Interrog. No. 1, Pls.' First Supplemental Responses and Objections to Def. Kraft's First Set of Interrogs. (Oct. 25, 2013). Plaintiff has alleged that she was induced to purchase her brewer by statements on its exterior packaging that led her to believe Starbucks-branded coffee pods (known as "T-Discs") were and would remain available for use with the brewer. Plaintiff further alleges that these statements – "Featuring Starbucks Coffee" and "Enjoy the rich, full taste of Starbucks coffee, one perfectly brewed cup at a time" – were misleading at the time she purchased the brewer because the agreement that permitted Kraft to produce and distribute Starbucks-branded T-Discs for use with its Tassimo system had been terminated by Starbucks in November 2010.

Plaintiff brought suit against Defendants Kraft Foods Group, Inc. ("Kraft") and Starbucks Corporation ("Starbucks") (together, "Defendants"), asserting violations of the Michigan Consumer Protection Act ("MCPA") and Lanham Act and claims for breach of contract, breach of warranty, and innocent misrepresentation. On December 6, 2012, the Court granted in part

Defendants' motions to dismiss Plaintiff's First Amended Complaint, allowing certain of

Plaintiff's claims under the MCPA to proceed.  Plaintiff's surviving claims arise under the

provisions of the statute prohibiting:

- "Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," Mich. Comp. Laws § 445.903(1)(a);

- "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," *id.* § 445.903(1)(c);

- "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer," *id.* § 445.903(1)(s);

- "Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is," *id.* § 445.903(1)(bb); and

- "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner," *id.* § 445.903(1)(cc).

Plaintiff now moves for an order permitting her to pursue these claims on behalf of all

Michigan residents who purchased brewers during a 16-month period following Starbucks'

termination of Defendants' T-Disc distribution agreement.[1]  She seeks certification of a class

comprising:

All persons who are current Michigan residents and purchased a Tassimo brewer for personal use and not for resale, in Michigan, between November 1, 2010 and February 20, 2012, excluding (1) Kraft, Starbucks, or any entity in which Kraft or Starbucks has a controlling interest, their legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned, any member of the Judge's staff, and any member of the Judge's immediate family; (3) government entities; and (4) any claims for personal injury, wrongful death, and/or emotional distress.

---

[1] Plaintiff filed two substantively dissimilar motions for class certification on September 30, 2013 (ECF #67), and October 1, 2013 (ECF #68).  By agreement of the parties, confirmed by Plaintiff's letter motion to strike (ECF #73), the earlier-filed motion and brief are to be treated as withdrawn.  Starbucks' brief responds to Plaintiff's October 1 motion and brief.

2

Pl.'s Mot. for Class Certification and Mem. in Supp. at 10 (filed Oct. 1, 2013) (ECF #68) ("Mot.").

## ARGUMENT

Plaintiff bears the burden of demonstrating that the prerequisites to class certification provided by Federal Rule of Civil Procedure 23 are satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). First, Plaintiff must show the requirements of Rule 23(a) have been met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Second, Plaintiff must demonstrate that the "proposed class . . . satisf[ies] at least one of the three requirements in Rule 23(b)." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 372 (E.D. Mich. 2011) (internal quotation marks omitted). Plaintiff seeks certification under Rule 23(b)(3), which requires a showing "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In her moving brief, Plaintiff fails to show that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.*; *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2549 n.2 (2011). Plaintiff cannot make that showing, because the evidence developed in pre-certification discovery reveals a multitude of issues that cannot fairly or reasonably be "adjudicat[ed] by representation." *Amchem*, 521 U.S. at 623. Under Michigan law, Plaintiff's claims must be construed by reference to the common-law tort

of fraud – but Plaintiff will not be able to prove falsity, reliance, materiality, or injury using representative evidence.  Damages, if any, will likewise need to be calculated claim by claim.

Plaintiff also cannot demonstrate that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).[2]  A longstanding relationship between Plaintiff and one of the proposed class attorneys, Mr. McCarthy, creates a potential conflict of interest between Plaintiff and absent class members and requires that one or both be prevented from representing the putative class.[3]

## I. The Proposed Class Members' Claims Raise Numerous Issues That Can Only Be Addressed On An Individual Basis

Class certification is not permitted in this case because nearly every element of Plaintiff's claims will require individualized proof.  Plaintiff's MCPA claims are to be construed " 'with reference to the common-law tort of fraud,' " *Zine v. Chrysler Corp.*, 236 Mich. App. 261, 283 (1999) (quoting *Mayhall v. A.H. Pond Co.*, 129 Mich. App. 178, 182-83 (1983)), which requires proof "(1) that the defendant[s] made a material representation that was false; (2) the defendant[s] knowingly made the false representation with the intent that the plaintiff would act upon it; (3) that the plaintiff acted in reliance upon it; and (4) resulting damages." *OnStar*, 278 F.R.D. at 376 (construing claims under subsections (c), (s), (bb), and (cc) of the MCPA).  Under the circumstances of this case, falsity, reliance, materiality, injury, and damages cannot be established through common evidence.  The applicability of the MCPA must likewise be determined on a claim-by-claim basis.  Plaintiff's motion for class certification should therefore be denied.

---

[2] Plaintiff also fails to demonstrate that the numerosity and typicality requirements of Rule 23(a) have been met with respect to a properly defined class.  Starbucks nevertheless does not contest those elements for present purposes.

[3] Starbucks does not contest Mr. Macuga's adequacy as class counsel.

A.  **Plaintiff Cannot Prove the Making of a False Statement by Defendants Through Common Evidence**

Plaintiff seeks to certify a class of all Michigan purchasers of Tassimo brewers between November 1, 2010, and February 20, 2012.  There is no evidence, however, that all such purchasers bought Tassimo machines in packaging containing the statements alleged to be misleading by Plaintiff.  To the contrary, Kraft redesigned the packaging for the brewers in mid-2011 to omit all references to Starbucks products.  *See* Exhibit 1 at KFGI00025615 (June 2011 press release:  "Kraft Goes to Market with New Look for Tassimo"); Exhibit 2 at KFGI00034826 (final approval for new boxes); Exhibit 3 at KFGI00022838 (images of new packaging); *see also* Exhibit 4 at KFGI00026656 (November 2011 email noting new packaging in stores of major retailer); Exhibit 5, Provine Dep. Tr. 97:1-98:10, 128:3-129:8, 131:8-11.[4]

Moreover, at the time Starbucks terminated Defendants' T-Disc distribution agreement, Kraft already had in place a plan to apply "stickers" to the packaging of brewer boxes that aligned with a new national advertising campaign emphasizing Tassimo's technological advantages over competitive systems.  Exhibit 6 at KFGI00001026.  In early 2011, Kraft printed one million such stickers, to be applied to brewer inventory at Bosch's[5] facilities and in the stores of retailers that had already purchased the brewers for resale.  Exhibit 7 at KFGI00001705. After Starbucks' termination of the distribution agreement, these stickers were placed over the

---

[4] Plaintiff asserts that Corey Provine, Kraft's Rule 30(b)(6) witness, "admitted . . . that Defendants never modified the Tassimo packaging to remove or moderate the Starbucks information."  Mot. 6.  That is incorrect: ███████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[5] Bosch manufactured, packaged, and distributed the brewers to retailers that had purchased them for resale.

allegedly misleading statements on the brewer boxes, and additional stickers were applied to cover all instances of the Starbucks logo.[6] █████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████; Exhibit 11 at KFGI00034813; Exhibit 5, Provine Dep. Tr. 134:14-23, 143:23-144:9; *compare* Exhibit 12 and Exhibit 13 (images of T20 box with allegedly misleading statements) *with* Exhibit 14 at KFG00018444 (image of identical T20 box with sticker covering allegedly misleading statements).[7]

### B. Plaintiff Cannot Prove Reliance Through Common Evidence

Plaintiff will not be able to demonstrate through common evidence that even those class members who were exposed to the allegedly misleading statements relied on them. Doing so will require plaintiff-specific proof, because uncontroverted evidence shows that a significant number of Tassimo owners – in fact, a majority – bought their brewers for reasons unrelated to the availability of Starbucks coffee.

---

[6] Plaintiff notes that "David Hyland, Kraft's Tassimo director, testified . . . that Defendant Kraft devised a 'contingency' plan whereby Kraft contemplated going into retailers and placing stickers on Tassimo boxes to conceal the trademark and information related to Starbucks . . . [but] admitted . . . that he had no knowledge of such a sticker-plan ever being implemented." Mot. 7. ██████████████████████████████████████████████████ The uncontroverted documentary and testimonial evidence described above resolves that uncertainty.

[7] Plaintiff notes that Meijer and Target did not permit manufacturers to alter the packaging of consumer goods already on their shelves. Mot. 7. But that policy was not uniform among retailers – a fact that only poses an additional problem for class certification. *See* Exhibit 15 at KFGI00007548 (describing stickering campaign undertaken by Bosch at Kohl's); Exhibit 16 at KFGI00008613 (same, at Bed, Bath, and Beyond).

Plaintiff relies on *Dix v. American Bankers Life Assurance Co. of Florida*, 429 Mich. 410 (1987), to argue that "individual reliance need not be proved in a class action under the [MCPA]" and that " '[i]t is sufficient if the class can establish that a reasonable person would have relied on the representations.' "  Mot. 13-14 (quoting *Dix*, 429 Mich. at 417-18) (emphasis omitted).  But, as the Eastern District of Michigan held in a case closely analogous to this one, *Dix* is no longer good law following *Wal-Mart*, at least in a class action brought in federal court under Rule 23.

In *OnStar*, purchasers of vehicles containing OnStar navigation equipment brought suit against the vehicles' manufacturers, claiming that the manufacturers had failed to reveal to purchasers that the OnStar equipment would become unusable at a known date in the future because of a federally mandated switch from analog to digital technology.  278 F.R.D. at 361.  Plaintiffs asserted misrepresentation claims under the MCPA, including (as here) under subsections (c), (s), (bb), and (cc) of the statute.  *Id.* at 361-62.  Plaintiffs sought certification under Rule 23(b)(3) and argued that *Dix* had established that "members of a class proceeding under the MCPA need not individually prove reliance on the alleged misrepresentations."  *Id.* at 377 (internal quotation marks and brackets omitted).  The district court rejected this argument, finding that it ran afoul of *Wal-Mart*'s direction that " 'a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims.' "  *Id.* at 378 (quoting *Wal-Mart*, 131 S. Ct. at 2561) (alteration in original).  The court reasoned that "[i]f, in certifying a class under Fed. R. Civ. P. 23, this Court were to apply a 'reasonable person' standard to determine reliance on a class-wide basis, that would prevent Defendant . . . from asserting a statutory defense that it would be able to assert in an individual action."  *Id.*

7

Certification of the proposed class in this case would present an even stronger conflict with *Wal-Mart* than the one found by the court in *OnStar*. In *OnStar*, the material fact allegedly omitted by defendants was that the class members' OnStar equipment would not work at all after a known date. In this case, by contrast, the material fact allegedly omitted by Kraft is that Tassimo purchasers would not be able to brew Starbucks coffee using their brewers after a known date. But the evidence shows that even during the period when the allegedly misleading statements still appeared on brewer boxes, most Tassimo purchasers did not rely on the availability of Starbucks-branded T-Discs when purchasing a brewer.

*First*, extensive consumer research shows that the primary reason consumers purchased a Tassimo machine was that, unlike other systems, the machine could brew "specialty beverages," including cappuccinos, lattes, espresso, and hot chocolate, in addition to regular coffee. █

████████████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████████



*Second*, even consumers who considered the brands of coffee available for a system when purchasing a brewer relied primarily on the *breadth* of brands available for the system, rather than the availability of a particular brand. ███████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Breadth was important to single-cup system purchasers because, as Plaintiff's own deposition testimony emphasized, one of the primary attractions of a single-cup brewer was that it could accommodate the competing taste preferences of the members of a family or social group.  *See, e.g.*, Exhibit 29, Montgomery Dep. Tr. 63:11-22 ("[T]he attraction was that everybody could have the kind of coffee they wanted."), 57:10-13 ("[W]henever I had friends or people over they could have whatever kind they wanted, and it didn't have to be what I was drinking."), 39:24-40:7; ███████████████

████████████████████████████████████████████████

---

[8] Plaintiff asserts that "it is undisputed that Tassimo systems are primarily and overwhelmingly used by consumers to brew coffee."  Mot. 3 n.1.  This assertion, like the majority of factual assertions in Plaintiff's brief, is not supported by evidence and is thus entitled to no weight.  *See Compressor Eng'g Corp. v. Manufacturers Fin. Corp.*, 292 F.R.D. 433, 444 (E.D. Mich. 2013) ("Going beyond the pleadings is necessary because a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.").

████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████  Exhibit 30 (Tassimo advertising campaign: "Family Bonding, Without the Family Agreeing").

*Finally*, even the minority of consumers who purchased a Tassimo machine with the intention to use it in part to brew a particular type of coffee did not uniformly intend to use it primarily to brew *Starbucks* coffee. ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████  ████  ████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

---

[9] Gevalia, like Starbucks, was marketed and sold as a "premium" coffee brand.  Exhibit 23, Hyland Dep. Tr. 18:19-22.  Plaintiff asserts, in reliance on a declaration filed by Mr. Hyland in a preliminary injunction proceeding brought by Kraft against Starbucks, that Defendants' distribution agreements "contractually dictat[ed] that Starbucks was to be the *only* premium coffee sold for use in the Tassimo."  Mot. 6.  ███████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

As Plaintiff acknowledged repeatedly at her deposition, the fact that consumers purchased Tassimo brewers for many different reasons means that whether a class member can fairly claim to have been misled by statements regarding the availability of Starbucks T-Discs requires an inherently individualized inquiry.  *See* Exhibit 29, Montgomery Dep. Tr. 148:3-15 ("[W]hat would be difficult to measure would be the expectation of the customer . . . .  I don't have any clue about what would be proper for the people who . . . lacked the desire to have Starbucks."), 149:1-10 ("Q. . . . If such a person who doesn't like the taste of Starbucks purchases a Tassimo brewer . . . , would they be a member of your class? . . . THE WITNESS: See, that's what I meant earlier when I said this is a tricky thing because then you would – wouldn't that individual have to measure what the impact was."), 153:12-21 ("Q. . . . Do you think a person who likes Maxwell House coffee more than Starbucks has suffered the same injury that you have? . . . A. . . . [I]f their expectation is to have Maxwell House and they keep getting Tassimo Maxwell House[,] [t]hey might be pleased.").  Under these circumstances – where only a small fraction of purchasers might have relied on the allegedly misleading statements on the brewer's box – certification of a class for trial by "representative" evidence would deprive Defendants of the ability to litigate an issue central to the class members' claims, and is not permitted.  *Wal-Mart*, 131 S. Ct. at 2561.[10]

---

[10] For the reasons described above, even if the Court were to apply *Dix*'s lower, state-law standard for class certification, certification still would be unwarranted because Plaintiff cannot "establish that a reasonable person would have relied on the representations."  *Dix*, 429 Mich. at 417-18.

**C.**     **Plaintiff Cannot Prove Materiality Through Common Evidence**

For the same reasons class members' reliance on the allegedly misleading statements cannot be proven by common evidence, determining the materiality of the alleged misstatements will require an individualized, consumer-by-consumer inquiry.  Materiality is an element of a cause of action under the MCPA.  *Zine*, 236 Mich. App. at 283.  "To be material, the representation need not 'relate to the sole or major reason for the transaction, but . . . it [must] relate to a[n] . . . important fact.' "  *Id.* (quoting *Papin v. Demski*, 17 Mich. App. 151, 155 (1969)).  Materiality under the MCPA is "subjective" (in contrast to the "objective" standard in many laws, including federal securities laws) – that is, a "material" fact is one important to a particular consumer entering into a particular transaction, rather than a "reasonable" consumer.  *See id.* (finding alleged misrepresentation "not . . . material" because plaintiff was unaware of it); *Kussy v. Home Depot U.S.A., Inc.*, 2006 WL 3447146, at *6 (E.D. Mich. Nov. 28, 2006) (same, because plaintiff was alerted to misrepresentation before purchase).  Because the availability of Starbucks-branded T-Discs was not an "important fact," *Papin*, 17 Mich. App. at 155, for most consumers who purchased a Tassimo brewer, materiality can only be proven on a plaintiff-by-plaintiff basis, and class certification is not permitted.

**D.**     **Plaintiff Cannot Prove Injury Through Common Evidence**

Whether an individual class member has suffered an injury cognizable under the MCPA also cannot be determined through common evidence, because multiple categories of putative class members – including those who purchased their brewers knowing that the Kraft-Starbucks relationship had ended, and those who returned their brewers – have no claims.  *See Mayhall*, 129 Mich. App. at 182-83 (MCPA incorporates common-law requirement that "a plaintiff must have 'suffered injury' as a result of his reliance on the defendant's false representation").

"[L]iability issues relating to injury must be susceptible of proof on a classwide basis to meet the predominance standard" of Rule 23.  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013).

Plaintiff will not be able to demonstrate injury on a class-wide basis because the termination of the Kraft-Starbucks relationship was widely publicized throughout the class period. ███████████████████████████████████████████████████████ ████████████████████ Because "[t]here can be no fraud where a person has the means to determine that a representation is not true," *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464 (Mich. Ct. App. 1994), "any class member who had actual knowledge of the [termination] . . . and purchased [a brewer] anyway cannot establish any injury under the MCPA," *OnStar*, 278 F.R.D. at 379.  Accordingly, Michigan courts have uniformly held that the public availability of information that rebuts an alleged misstatement makes class certification inappropriate.  *See*, *e.g.*, *id.*; *Zine*, 236 Mich. App. at 285; *cf. Kussy*, 2006 WL 3447146, at *6-7 (denying certification where named plaintiff had knowledge of misrepresentation prior to purchase).

Here, purchasers of Tassimo machines could have learned about the future unavailability of Starbucks-branded T-Discs from a variety of sources.  National and regional media prominently reported on each phase of Defendants' dispute, including Starbucks' November 2010 letter terminating the distribution agreements, *see*, *e.g.*, Exhibit 33 (Bloomberg News), Exhibit 34 (Reuters), Exhibit 35 (Chicago Tribune); the denial of Kraft's request for a preliminary injunction, *see*, *e.g.*, Exhibit 36 (Reuters), Exhibit 37 (New York Times), Exhibit 38 (Chicago Sun-Times), Exhibit 39 (Associated Press), Exhibit 40 (Bloomberg News), Exhibit 41 (New York Times), Exhibit 42 (New York Times); the commencement of arbitration proceedings, *see*, *e.g.*, Exhibit 43 (Financial Times), Exhibit 44 (Fox News), Exhibit 45 (CNN);

13

Kraft's announcement that it would expand its distribution of Gevalia to the channels previously covered by Defendants' distribution agreement, *see*, *e.g.*, Exhibit 46 (Wall Street Journal), Exhibit 47 (USA Today); and Starbucks' announcement of a beverage pod distribution deal with Keurig, *see*, *e.g.*, Exhibit 48 (Reuters), Exhibit 49 (Bloomberg News), Exhibit 50 (Wall Street Journal), Exhibit 51 (Bloomberg News).  Information regarding the end of the T-Disc distribution agreement and Starbucks' agreement with Keurig was also available on Starbucks' website.  Exhibit 52; *see OnStar*, 278 F.R.D. at 365.

Plaintiff cannot establish injury on a class-wide basis for the additional reason that the proposed class (comprising all persons who "purchased a Tassimo brewer") does not exclude consumers who returned their brewers.  Such consumers have suffered no injury from Defendants' alleged misstatements, and have no claim under the MCPA.  Nor does the class exclude the quarter of consumers who purchased their brewers at retailers with "any time, any reason" return policies, who still may return their brewers for a full refund.  *See* Exhibit 53 at KFGI00000307 (26 percent of "on-demand volume" sold through Costco, Sam's Club, and Bed, Bath & Beyond); Exhibit 54 (Costco return policy); Exhibit 55 (Sam's Club return policy); Exhibit 56 (Bed, Bath & Beyond return policy).  These consumers, too, may lack an injury under the MCPA.  *See OnStar*, 278 F.R.D. at 379 (suggesting consumers who chose not to replace their service at no cost "revealed that their net valuation of [the] service is zero" and "therefore the loss of the service caused them no actual damages") (internal quotation marks omitted).

### E.  Plaintiff Cannot Prove Damages Through Common Evidence

Class certification is also inappropriate because no component of damages – the price a consumer paid for a brewer, the "actual value" of the brewer to the consumer at the time of purchase, or the other out-of-pocket losses the consumer might claim – can be calculated on a

common basis.  Under the MCPA, "[e]xcept in a class action, a person who suffers loss as a result of a violation . . . may bring an action to recover actual damages or $250.00, whichever is greater."  Mich. Comp. Laws § 445.911(2).  In a class action, however, the damages that may be recovered by a class member are limited to the "actual damages" caused by the violation of the Act.  *Id.* § 445.911(3).  Plaintiff claims that these damages "will be computed on an entirely common basis," Mot. 16 – but does not explain that contention, much less support it with evidence.  To the contrary, as the *OnStar* court held in analogous circumstances, "determining whether any given member of the proposed class can establish actual damages, and what such damages would be, would require inherently individual inquiries."  278 F.R.D. at 379.

1.      The primary component of any class member's claim for damages will be " 'the difference between the actual value of the property when [it was sold] and the value that it would have possessed if the representations had been true.' "  *Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500, 509 (W.D. Mich. 1998) (quoting *Mayhall*, 129 Mich. App. at 185).  "The nature of the remedy [is] fulfillment of the plaintiff's expectations," *Mayhall*, 129 Mich. App. at 185 – that is, compensation for the value a particular consumer assigned to the particular feature that was misrepresented, *OnStar*, 278 F.R.D. at 379.

That value cannot be computed on a "mass basis."  Mot. 15.  A consumer who did not intend to use his brewer to brew Starbucks coffee suffered no damages as a result of Defendants' alleged misstatements.  *See OnStar*, 278 F.R.D. at 379.  Other members of the class may have valued the ability to brew Starbucks coffee, but the extent to which they did so will vary.  A consumer like Plaintiff – who used her brewer to make both Maxwell House and Starbucks coffee, Exhibit 29, Montgomery Dep. Tr. 59:5-25 – cannot fairly claim that the value of her brewer was completely impaired by the lack of availability of Starbucks-branded T-Discs.

      **2.**      Even the price consumers paid for their brewers cannot be determined by common evidence.  During the class period, Kraft distributed three models of Tassimo brewers, each with a different suggested retail price.  Exhibit 57 at KFGI00000332.  Kraft did not ultimately control what retailers charged consumers for the brewers, and prices varied based on individual retailer promotions.  *See*, *e.g.*, Exhibit 58; Exhibit 59 at KFGI00000056.  ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████.  As a result, individual consumers may have paid anywhere between $99 and $199 for their brewers.  *See id.*; Exhibit 60 at KFGI00000326.  Additionally, brewer owners who complained to Kraft regarding the availability of Starbucks were given free product and coupons, Exhibit 5, Provine Dep. Tr. 150:20-151:12, the value of which might entitle Defendants to an offset against individual damages.

      **3.**      The calculation is further complicated by the possibility of individual claims for economic damages other than diminution of brewer value.  *See OnStar*, 278 F.R.D. at 378.  Plaintiff claims a variety of such damages, including "[t]ime wasted trying to find the product," time spent pursuing a remedy, and "transportation time."  Exhibit 29, Montgomery Dep. Tr. 106:7-14.  Plaintiff asserts that other class members are entitled to these categories of damages as well, *id.* 106:20-107:8, but acknowledges that calculating such damages would require individualized inquiries.  *See*, *e.g.*, *id.* at 107:7-8 ("It depends probably on how each individual values their time."); *id.* 108:24-25 ("Well, each person's time spent would be unique to them, including me."); *id.* 107:20-108:14 (transportation costs unique to each class member).

## F.    Plaintiff Cannot Demonstrate the Applicability of the MCPA Through Common Evidence

Plaintiff also cannot prove the applicability of the MCPA to any particular purchase because, "if an item is purchased primarily for business or commercial rather than personal purposes, the MCPA does not supply protection." *Zine*, 236 Mich. App. at 273. This aspect of "'[t]he applicability of the MCPA is to be decided on a case-by-case basis,' . . . because . . . the determination of whether a particular good was used primarily for personal or commercial use is a fact-intensive inquiry." *OnStar*, 278 F.R.D. at 380 (quoting *Edwards v. Cape to Cairo, L.L.C.*, 2010 WL 986502, at *3 (Mich. Ct. App. Mar. 18, 2010)); *cf.* Exhibit 29, Montgomery Dep. Tr. 57:15-16 ("I figured if I liked it at home then I'd get another one for the office later."). Accordingly, courts have denied certification where an MCPA claim is asserted regarding a good that can be used for either business or personal purposes. *See, e.g.*, *Zine*, 236 Mich. App. at 290 (denying certification where "the trial court would have to determine for each class member who had purchased a new vehicle whether the vehicle was bought primarily for personal, family, or household use"); *OnStar*, 278 F.R.D. at 380.

Plaintiff has attempted to remedy this problem by confining the class to consumers who "purchased a Tassimo brewer for personal use," Mot. 10 – but "[e]xcluding 'persons or entities who purchased their [brewers] primarily for commercial or business purposes' from the proposed class will not resolve this issue," *OnStar*, 278 F.R.D. at 381. For a class to be certified, it must be "administratively feasible for the court to determine whether a particular individual is a member of the proposed class" "without individualized fact finding." *Compressor Eng'g*, 292 F.R.D. at 446 (internal quotation marks omitted). And, under *Wal-Mart*, "Defendants cannot be foreclosed from pursuing" "individualized challenges" regarding the applicability of the MCPA.

*Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412, 432-33 (E.D. Mich. 2013) ("changing the class definition would not resolve this issue").

## II. Plaintiff's Longstanding Relationship With Mr. McCarthy Requires One Or Both To Be Denied Appointment As A Class Representative

If a class action is allowed to proceed in spite of the many individualized issues identified above, either Plaintiff should be prevented from serving as a class representative or Mr. McCarthy should be prevented from serving as class counsel because their longstanding personal relationship threatens Plaintiff's ability to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

In his declaration in support of his appointment as class counsel, Mr. McCarthy avers that he has an "attorney:client relationship with; [is] not and [has] never been related to Plaintiff, Pamella Montgomery." Mot. Ex. I (Decl. of Timothy H. McCarthy) ¶ 5. Mr. McCarthy fails to disclose, however, that he has a longstanding personal relationship with Dr. Montgomery, who seeks to serve as the sole named plaintiff in this class action. At her deposition, Plaintiff testified that she had been a friend of Mr. McCarthy's family for decades, and had known him since "[he] was] a teenager." Exhibit 29, Montgomery Dep. Tr. 34:8-35:1. Mr. McCarthy also currently represents Plaintiff in two other lawsuits. *Id.* 25:3-26:12. Finally, in the two years he has been practicing law, Mr. McCarthy has retained Plaintiff as a testifying expert in "[t]wo or three" cases, for which she received compensation. *Id.* 36:17-20, 37:16-19.

"A key element in the determination of whether a plaintiff's interests are antagonistic to those of other members of the class is the relationship between the class representative and class counsel." *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010). That is because, "when a class representative is closely associated with class counsel, he or she may permit a settlement less favorable to the interests of absent class members." *In re Discovery Zone Sec. Litig.*, 169

F.R.D. 104, 108 (N.D. Ill. 1996).  Where a prior relationship between class counsel and a named plaintiff creates "the risk of an unnecessary appearance of impropriety," removal of either class representative is a proper means to resolve the conflict.  *Zlotnick v. TIE Communications, Inc.*, 123 F.R.D. 189, 194 (E.D. Pa. 1988).

"Even where the named plaintiff does not expect to share directly in the attorneys' fees, [her] . . . relationship with counsel may leave [her] more interested in maximizing the return to [her] counsel than in aggressively presenting the proposed class action."  *Discovery Zone*, 169 F.R.D. at 109 (internal quotation marks omitted); *see also* 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.25[2][b][vi] (3d ed. 1999) ("[A] conflict . . . may exist if the class representative stands to benefit directly or indirectly from the goodwill of class counsel created through the class action.").  This concern is not limited to familial relationships, but extends to other business and personal relationships as well.  *See, e.g., Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 91 (7th Cir. 1977) ("The lower court's decision is supported by a majority of courts which have refused to permit class attorneys, their relatives, or business associates from acting as the class representative.") (footnotes omitted); *Discovery Zone*, 169 F.R.D. at 108; *IMAX*, 272 F.R.D. at 155-57.  *IMAX* is particularly instructive.  There, the district court disqualified the named plaintiff in a securities suit based in part on findings that (1) the plaintiff and proposed class counsel "ha[d] been neighbors and friends for between 20 and 25 years"; (2) the proposed class counsel was also representing the plaintiff in other litigation; and (3) the plaintiff regularly received fees from proposed class counsel for other business.  272 F.R.D. at 156.

Where a prior relationship between the proposed class representatives "raises questions about the adequacy of the plaintiff, the degree of concern and involvement demonstrated by the representative becomes especially important."  *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303,

310 (D. Mass. 1987).  A class representative who "relies heavily" on class counsel during his or

her deposition increases the likelihood of impropriety.  *Id.*  Such was the case with Plaintiff, who

was unable to answer basic questions about her claims without coaching by Mr. McCarthy.[11]

       The possibility that Plaintiff will improperly favor Mr. McCarthy, to the detriment of the

class, is further heightened by the fact that Plaintiff has no understanding of her fee agreement

with counsel.  *See* Exhibit 29, Montgomery Dep. Tr. 38:1-25 ("Q. . . . Do you know the terms of

your fee agreement with Mr. McCarthy?  A.  I don't know.  That really wasn't my focus."),

---

[11] *See*, *e.g.*, Exhibit 29, Montgomery Dep. Tr. 45:4-47:16 ("Q.  In your Amended Complaint you
allege that you purchased the Tassimo brewing system after comparing the Tassimo and the
Keurig systems?  A.  No, I didn't say that. . . . MR. McCARTHY:  I think you're
mischaracterizing the context. . . . The context of the statement in the Complaint. . . . It's a
pleading.  It's in the record.  We know what it says. . . . A.  I thought you meant did I say that in
my testimony today, and I hadn't said that sentence in here today.  Okay?"); *id.* 48:11-49:15 ("Q.
Did you consult any other information outside of the store?  MR. McCARTHY:  Objection. . . .
She has indicated that the extent of her review was to select the one that said that you could get
Starbucks for it."); *id.* 61:3-63:10 ("Q.  You had mentioned earlier that you were purchasing it
not only for yourself but also for your daughter and adopted daughter.  Did they – MR.
McCARTHY:  No.  Hold on a second.  I think that mischaracterizes her testimony to the extent
that I think previously she said she purchased it for herself and then secondarily it would be there
for others when they were visiting to have drinks of coffee . . . .  MS. MYRIANTHOPOULOS:  I
think a proper objection would be an objection to form, and you can say mischaracterizes
testimony, but I think it's improper for you to be coaching the witness with your recollection of
what her testimony was.  MR. McCARTHY:  Okay.  Your correction is appreciated, but I'm
going to state my objections they way I want to state them. . . . Q. . . . Is it correct that you
intended . . . to serve coffee from your brewer to other people besides yourself? . . . MR.
McCARTHY:  Don't answer that."); *id.* 77:25-79:7 ("Q.  Does the brewer that you purchase[d]
resemble any of the brewers pictured in this document? . . . THE WITNESS:  The one I have
now is . . . MR. McCARTHY: . . . None of these are the boxes."); *id.* 90:13-91:13 ("Q. . . . Do
you find the statement featuring Starbucks coffee to be a false and misleading statement?  A.  It
did feature Starbucks coffee.  Q.  So is the answer no?  MR. McCARTHY:  She's already
testified that this was false and misleading a long time ago."); *id.* 129:22-131:22 (instructing
witness not to answer the question: "Is it your understanding that you continue to represent a
nationwide class of consumers who purchased Tassimo brewers?"); *id.* 142:15-146:11 (Plaintiff
unable to describe relief she is seeking without reading Prayer for Relief from First Amended
Complaint); *id.* 190:10-192:6 ("Q. . . . Dr. Montgomery, why did you reject the settlement offer
that Starbucks made to you before this litigation?  A.  Why?  Q.  Yes.  A.  I don't know.  I didn't
– I didn't feel it was complete.  I felt it was . . . MR. McCARTHY: . . . There was no such
settlement offer . . . .  THE WITNESS:  I didn't hear about a specific settlement [offer] . . . .").

39:20-22 ("Q. . . . Do you know what Mr. McCarthy will receive as compensation?  A.  No. Whatever he – whatever he bills for.").  Mr. McCarthy has, moreover, failed to produce the fee agreement, despite many requests by Defendants and many promises by Mr. McCarthy that he would do so.  Declaration of Caitlin S. Hall in Support of Starbucks' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification ¶¶ 3-24.  *See Klein v. Henry S. Miller Residential Servs., Inc.*, 82 F.R.D. 6, 9 (N.D. Tex. 1978) ("[t]he Court must maintain constant vigilance in overseeing the conduct of the self-appointed class representative," which requires evaluation of "the question of award of attorneys fees in the settlement or possible judgment of [a] lawsuit").

## CONCLUSION

The motion for class certification should be denied.

Dated:  December 20, 2013                     Respectfully submitted,


/s/ Caitlin S. Hall
Edward P. Perdue (P55888)
DICKINSON WRIGHT PLLC
200 Ottawa Avenue, N.W.
Suite 1000
Grand Rapids, Michigan 49503-2427
Tel:  616-458-1300
Fax:  616-458-6753

Aaron M. Panner
Wan J. Kim
Caitlin S. Hall
KELLOGG, HUBER, HANSEN,
   TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel:  202-326-7900
Fax:  202-326-7999

*Attorneys for Starbucks Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 20, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Caitlin S. Hall

*Attorney for Starbucks Corporation*