**\*\*\* REDACTED – FOR PUBLIC INSPECTION\*\*\***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PAMELLA MONTGOMERY, on behalf of Herself and for the Benefit of All with the Common or General Interest, Any Persons Injured, and All Others Similarly Situated, | ) ) ) ) ) |
|      Plaintiffs, | ) )  Hon. Gordon J. Quist |
| v. | )  Case No. 1:12-cv-00149 ) |
| KRAFT FOODS GLOBAL, INC., a Delaware Corporation; and STARBUCKS CORPORATION, a Washington Corporation, | ) )  **ORAL ARGUMENT REQUESTED** ) ) ) |
|      Defendants. | ) ) |

### DEFENDANT KRAFT FOODS GROUP, INC.'S OPPOSITION TO
### PLAINTIFF'S CORRECTED MOTION FOR CLASS CERTIFICATION

Dean N. Panos
Richard P. Steinken
Thalia L. Myrianthopoulos
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Phone: (312) 222-9350
Facsimile: (312) 527-0484

Craig H. Lubben
MILLER JOHNSON PLC
(Kalamazoo)
Rose Street Market Bldg.
303 N Rose St., Ste. 600
Kalamazoo, MI 49007-3850
(269) 226-2958

Christopher James Schneider
MILLER JOHNSON PLC
(Grand Rapids)
250 Monroe Ave., NW,
Ste. 800
P.O. Box 306
Grand Rapids, MI 49501-0306
(616) 831-1738

*Counsel for Defendant Kraft Foods Group, Inc. f/k/a/ Kraft Foods Global, Inc.*

Dated: December 20, 2013

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

I.  General Background ................................................................................................ 2

II.  Tassimo Brewer Packaging Varied During the Class Period .............................. 3

III.  Kraft Consumer Research Establishes That Consumers Purchased Tassimo
     Brewers For Many Reasons Unrelated to Starbucks Products. ........................... 5

IV.  Consumer T-Disc Purchases Show a Preference for Other Coffee Brands Over
     Starbucks. ................................................................................................................. 8

V.  Media Outlets Widely Reported Throughout The Class Period That the Kraft-
    Starbucks Relationship Was Ending and Starbucks T-Discs Would Be
    Unavailable. ............................................................................................................. 9

ARGUMENT ..................................................................................................................... 10

I.  The Proposed Class May Not Be Certified Because It Is Not Ascertainable. ... 10

    A.  Plaintiff cannot demonstrate a reliable administratively feasible method by
        which the class may be identified ........................................................... 11

    B.  Plaintiff's proposed class definition is grossly overbroad and requires
        individual inquiries to identify class members with standing.............................. 13

        1.  Consumers for whom the availability of Starbucks was not a
            purchasing factor......................................................................... 14

        2.  Consumers who knew that Starbucks T-Discs would be
            unavailable ................................................................................ 15

II.  Plaintiff Cannot Demonstrate Commonality Because The Proposed Class Includes
     Consumers With Different Knowledge Who Purchased Products In Different
     Packaging For Different Reasons. ....................................................................... 16

III.  The Proposed Class May Not Be Maintained Under Rule 23(b)(3) Because
      Individual Issues Predominate Over Any Potential Common Issue .................. 19

IV.  Plaintiffs' Claims Are Not Typical of the Claims of the Class.......................... 21

V.  Plaintiff Has Not Satisfied Her Burden of Proving She Will Fairly and Adequately
    Represent the Class ............................................................................................... 22

CONCLUSION.................................................................................................................. 24

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)..........................................19

*APB Assocs., Inc. v. Bronco's Saloon, Inc.,*
No. 09-14959, 2013 WL 1789275 (E.D. Mich. 2013)...........................................13

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) ...................................................................16, 21

*Carrera v. Bayer Corp.,*
727 F.3d 300 (3rd Cir. 2013) ..........................................................................11

*Comcast v. Behrend,*
133 S. Ct. 1426 (2013)...........................................................................2, 19

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006)...............................................................................13

*Dix v. Am. Bankers Life Assur. Co. of Florida,*
429 Mich. 410, 415 N.W.2d 2016 (1987)...............................................................17

*Gen. Tel. Co. v. Falcon,*
457 U.S. 147 (1982)........................................................................................21

*In re Am. Med. Sys., Inc.,*
75 F.3d 1069 (6th Cir. 1996) .........................................................................22

*In re OnStar Contract Litig.,*
278 F.R.D. 352 (E.D. Mich. 2011) ........................................................... passim

*In re Whirlpool Corp.,*
722 F.3d 838 (6th Cir. 2013) ..........................................................................14

*Kraft Foods Global, Inc. v. Starbucks Corp.,*
411 Fed.Appx. 428, 2011 WL 673930 (2d Cir., Feb. 25, 2011)............................3, 4

*Kraft Foods Global, Inc. v. Starbucks Corp.,*
No. 7:10-cv-09085-CS, Doc. No. 1 (S.D.N.Y. Dec. 6, 2010) ....................................3

*MacDonald v. Thomas M. Cooley Law Sch.,*
724 F.3d 654 (6th Cir. 2013) ..........................................................................16

ii

*Marcus v. BMW of N. America, LLC*,
  687 F.3d 583 (3d Cir. 2012).........................................................................11

*Novak v. Nationwide Mut. Ins. Co.*,
  235 Mich.App. 675 599 N.W.2d 546 (1999)...........................................16

*Peters v. Cars To Go, Inc.*,
  184 F.R.D. 270 (W.D. Mich. 1998).........................................................21

*Romberio v. Unumprovident Corp.*,
  385 Fed.Appx. 423, 2009 WL 87510 (6th Cir. 2009).......................10, 22

*Van Vels v. Premier Athl. Ctr. Of Plainfield, Inc.*,
  182 F.R.D. 500 (W. D. Mich. 1998).........................................................21

*Vandermale v. Harvey Automotive, Inc.*,
  2005 WL 1459610 (Mich.App. 2005) ......................................................18

*Wal-Mart v. Dukes*,
  131 S.Ct. 2541 (2011)....................................................................... passim

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ...................................................................10

*Zine v. Chrysler Corp.*,
  236 Mich.App. 261 (1999) .......................................................................13

## STATUTES

M.C.L. § 445.903(1) ........................................................................................18

M.C.L. § 445.911(3) ........................................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 23..................................................................................... passim

## INTRODUCTION

Consumers who purchased the Tassimo single-cup beverage brewing system ("Tassimo brewer") since 2010 routinely cited the brewer's ease of use and unique ability to brew seven different kinds of beverages (coffee, tea, espresso, cappuccino, latte, hot chocolate, and crema), as key factors in their purchase decisions, with only a small percentage characterizing the availability of specific coffee brands as a factor in their decisions.  Sales figures consistently showed that Tassimo users preferred Maxwell House and Gevalia coffees over Starbucks.  And Starbucks' decision to terminate its contracts with Tassimo and the consequences of that decision were widely reported in the media well-before any impact on supplies was felt.  Yet, Plaintiff ignores these facts and asks this Court to certify a class under Federal Rule 23(b)(3) of *all* Michigan consumers who purchased a Tassimo brewer for personal use and not for resale in Michigan between November 1, 2010 and February 20, 2012, on the theory that Defendants had induced those purchases by misrepresenting the availability of Starbucks products for use with the brewers.  ECF No. 68 at 7.  Because Plaintiff lacks the evidence required under *Wal-Mart v. Dukes,* 131 S.Ct. 2541, 2551 (2011), to establish that this case can be tried on a class basis, Plaintiff's class certification motion must be denied.

Plaintiff cannot satisfy Rule 23(a)'s prerequisites of ascertainability, commonality or typicality because the proposed class would include thousands of consumers who did not see any, or saw different, allegedly deceptive statements, did not reasonably rely on the statements, or did not consider the availability of Starbucks in purchasing a brewer.  As a result, this Court would need to conduct mini-trials to determine each consumer's exposure to marketing information, expectations and intended use of the product, and awareness at the time of purchase of future availability of Starbucks.  Moreover, Plaintiff cannot adequately represent the class because her claims are not typical and she has not shown that she will vigorously prosecute the interests of the class through qualified counsel.

1

Further, Plaintiff seeks a damages-only class under Rule 23(b)(3) but fails to offer any common methodology to easily calculate class-wide damages as required under *Comcast v. Behrend,* 133 S. Ct. 1426, 1432-33 (2013). Plaintiff's suggestion that damages will be "[f]or all members of the putative class, the difference between what was represented and what was received is the value of the ability to brew single servings of Starbucks' coffee in the convenience of their homes" (ECF No. 68 at 16) is legally insufficient. Plaintiff's endorsement of an inherently subjective calculation for each consumer's damages precludes any valuation on a class-wide basis and makes class certification legally improper.

## FACTUAL BACKGROUND

### I.    General Background

The Tassimo brewer uses pre-packaged beverage discs, referred to as "T-Discs," that contain coffee, tea, hot chocolate or milk, to quickly brew a single-cup of coffee, tea, or other beverage on demand. *See* Ex. A ¶3-5.[1] Tassimo brewers are manufactured and sold by Bosch in grocery store and retail outlets, and sold by Kraft through direct-to-consumer channels like Tassimo.com. *Id.* ¶ 7. Throughout the class period, Bosch manufactured three primary Tassimo brewer models in the United States: the T20, T45, and T65 models. Ex. B ¶ 32. Additionally, in 2011, Bosch began manufacturing and selling a T46 model. *Id.* ¶¶ 19-21. Brewer prices ranged between $██ and $1██, depending on the model, channel, and whether the brewer was sold at the manufacturer-suggested retail price, or a lower promotional price. *Id.* ¶ 32. Additionally, various retailers offered consumers mail-in-rebate offers ranging from $██ to $██ in value, at various times throughout the class period. *Id.*

In August 2006 and July 2007, Kraft and Starbucks entered into Tassimo Supply and License Agreements, which together gave Kraft the exclusive right to license, market, sell and distribute T-Discs bearing the Starbucks, Seattle's Best and Tazo trademarks in certain specified channels in the United States, including grocery stores, drug stores, mass merchandisers and club

---

[1]    Exhibits A through BB are attached to the concurrently-filed Declaration of Thalia L. Myrianthopoulos.

stores. Ex. A ¶ 9. In November 2010, Starbucks made public statements that it was terminating its distribution agreements with Kraft. *Id.* ¶21. In response, Kraft sought a preliminary injunction to block Starbucks' termination of its distribution agreements. *See Kraft Foods Global, Inc. v. Starbucks Corp.,* No. 7:10-cv-09085-CS, Doc. No. 1 (S.D.N.Y. Dec. 6, 2010). By late February 2011, however, Kraft failed to obtain a preliminary injunction, and Starbucks was permitted to stop sending supplies to Kraft as of March 1, 2011. *See Kraft Foods Global, Inc. v. Starbucks Corp.,* 411 Fed.Appx. 428, 2011 WL 673930 (2d Cir., Feb. 25, 2011); Ex. B ¶ 8.

## II. Tassimo Brewer Packaging Varied During the Class Period

Prior to and during portions of the class period, Bosch marketed the Tassimo brewer in boxes that included the logos of Starbucks, Seattle's Best and Tazo. However, contrary to Plaintiff's claim that the Tassimo brewer packaging was not changed during the class period (ECF No. 68 at 6), that packaging changed at least three times during the 16-month class period, with the result that purchasers of the brewers received packaging that contained different or no displays of the Starbucks, Seattle's Best and Tazo brand logos. *See* Ex. B ¶¶ 3-22.

In early 2010, Kraft and Bosch began planning a packaging design change for Tassimo brewers and T-Discs that predated and was unrelated to Starbucks' announced termination of its distribution agreements with Kraft. Ex. B ¶ 3; Ex. C at 98:11-100:5. The purpose of the 2010 packaging redesign was ██████████████████████████████████ ███████████████████████. Ex. B ¶3. Tassimo Senior Brand Manager Corey Provine approved the brewer box redesign on behalf of Kraft in late August 2010 and early September 2010, with the understanding that Bosch would manufacture the approved brewer box graphics, and that the new brewer box design would begin appearing on retail shelves in May or June 2011. Ex. B ¶¶ 5-7. Both the original brewer packaging and the redesigned packaging approved by Kraft in Fall 2010 included Starbucks logos on multiple panels of the brewer box. Ex. B ¶ 7; Exs. B-2 & B-3.

On February 25, 2011 the Second Circuit affirmed the district court's denial of Kraft's preliminary injunction action to block Starbucks' termination of the distribution agreements as of March 1, 2011. *See Kraft Foods,* 411 Fed.Appx. 428. Soon thereafter, in early March 2011, Kraft began coordinating with Bosch to produce revised graphics for all Tassimo brewer boxes sold in North America. Ex. B ¶ 11-21. As a result of these discussions, Kraft and Bosch agreed on two primary revisions to Tassimo brewer boxes. <u>First</u>, Bosch developed, and on June 17, 2011 Kraft approved, revised brewer box graphics that eliminated the Starbucks, Seattle's Best and Tazo logos (the "June 2011 box design"). *Id.* ¶ 11-12, 18-21. Kraft approved the June 2011 box design with the understanding that Bosch would manufacture it, and that by Fall 2011 brewers packaged in the June 2011 design would begin shipping to U.S. retailers. *Id.*

<u>Second</u>, Bosch developed, and in April 2011 Kraft approved, a plan to design, produce, and apply stickers to cover and obscure the Starbucks, Seattle's Best and Tazo logos on existing brewer inventory. *Id.* ¶¶ 11- 17. From April through August 2011, Bosch designed and produced stickers to apply to the Tassimo brewer packaging (both the original brewer box design, and the redesigned packaging that Kraft approved in Fall 2010), and by June 2011, had identified more than ███ brewer boxes at retail and in warehouses that required the application of those stickers. *Id.* ¶ 16. As a result of these 2011 repackaging efforts (including the production of the June 2011 box design and box stickering efforts at retail and at warehouses) during the class period there were several versions of the Tassimo brewer boxes in circulation. *Id.* ¶ 22. Thus, during the class period Tassimo brewers were purchased by class members in packaging that may or may not have displayed the Starbucks brand logos. *Id.*

Plaintiff argues incorrectly that Defendants never removed the Starbucks logo from Tassimo packaging during the class period, relying on an incorrect interpretation of deposition testimony from Corey Provine, Kraft's Senior Brand Manager for Tassimo. ECF No. 68 at 6. However, Mr. Provine's statement regarding ████████████████████████████ ████████████████████████████████████████████████████. *See* Ex. C at 96:16-105:19). Plaintiff never asked Mr. Provine whether other revisions to the brewer

box were executed *after* the redesign, or *after* Starbucks terminated its distribution agreements with Kraft on March 1, 2011. *Id.* Additionally, Plaintiff ignores evidence from Mr. Provine, from Kraft's Senior Director of Tassimo David C. Hyland, from third-party retailer Meijer, and in documents produced by Kraft in discovery regarding Kraft and Bosch's efforts to modify existing inventory by covering Starbucks logos on brewer boxes with stickers. Ex. B ¶¶ 11-22 & Ex B-5–Ex. B-11; Ex. C at 134:14-150:6; Ex. D at 115:13-119:15; Ex. F at 72:13-75:10. Plaintiff also failed to offer evidence from other third party retailers as to their policies regarding changes to brewer box packaging.[2] Thus, the evidence suggests that some class members never saw on the brewer packaging the "statements" that are the subject of this class action, i.e. the Starbucks, Seattle's Best or Tazo logos.

### III. Kraft Consumer Research Establishes That Consumers Purchased Tassimo Brewers For Many Reasons Unrelated to Starbucks Products

Plaintiff claims, without citation to *any* evidentiary support, that Kraft induced consumers to purchase Tassimo brewers by using the Starbucks trademark and brand. ECF No. 68 at 5. In fact, Kraft's internal consumer research refutes any notion that all consumers purchased Tassimo brewers *because of* Starbucks or that their primary consideration at the time of purchase relates to the coffee available for use in the system. The research studies confirm that people bought Tassimo brewers for vastly different reasons that often had nothing to do with the availability of any brand of coffee, including Starbucks.



First, Kraft's research studies demonstrate that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. B ¶ 24. According to a January 2011 update to a Brand Tracking Study, the biggest factors were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

---

[2] Because Target Corporation objected to Plaintiff's 30(b)(6) subpoena and the witness, Ms. Lien, appeared in her individual capacity and not as a 30(b)(6) designee of Target. Ex. E at 56:11-20. Plaintiff did not depose a corporate representative of Target during Phase I discovery.

████████████████████████████████████████████████ played lesser roles in consumers' purchase decisions. *Id.*

Second, Kraft's research also shows that the vast majority of on-demand consumers █████████████████████████████████████████████████████████████████. On-demand consumers most associated Tassimo with █████████████████, but generally did not strongly associate Tassimo with ████████████████████████████████████████████████████ ██████████████. Ex. B ¶ 24. Indeed, in June 2010 Kraft's research suggested that of likely brewer purchasers ("Category Intenders") incorrectly associated Tassimo's primary competitor – *Keurig* – with the statement ██████████████████████████████████████ ██████████████████████████████. *Id.* ¶ 28 & Ex. B-15 at KFGI 00000431. By January 2011, Tassimo's association with ████████████████ remained unchanged among Category Intenders, with only ██% associating Tassimo with the statement █████████████ ████████████████████ Ex. B-12 at KFGI 00031111. A March 2011 Survey of 181 Tassimo owners found that only ██% identified ████████████████ as a main reason for their choice of a Tassimo brewer. Ex. B ¶ 25 & Ex. B-13 at KFGI 00002128. By contrast, among the Tassimo owners surveyed for that study, ██████████████████████████████████████████ █████████████████████████████████████ as a "main reason" for their brewer choice. *Id.*

Third, Kraft consumer research, including the March 2011 Survey, confirmed that consumers considered ███████████████████████████████████████████████ ████████████████████████████████████████████████████. Ex. B ¶ 25. A specific recommendation that emerged from this research was that Tassimo advertising should ███████████████████████████████████████████████████████████████████ ████████████████████████████████████. *Id.* & Ex. B-13 at KFGI 00002164.

<u>Fourth</u>, a ███████████████████████ Research Study performed in June 2010 led Kraft to conclude that ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ Ex. B ¶ 26 & Ex. B-14 at KFGI 00017142.  Kraft relied on this qualitative research study when it ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████ Ex. B ¶ 26.  The Brewbot campaign, which continued into 2011, thus emphasized the beverage variety that the Tassimo system offered, rather than the specific coffee brands available with the system.  *Id.*

In sum, Kraft consumer research performed in 2010 and 2011, refutes Plaintiff's unsupported theories that all Michigan consumers during the class period purchased Tassimo brewers *because of* Starbucks and that coffee brand availability is the primary consideration for consumers at the time of purchase.  Plaintiff argues that pleadings in Kraft's preliminary injunction proceedings against Starbucks contain admissions to support her theory by grossly misstating testimony from Mr. Hyland's Declaration to the effect that "the primary consideration for *consumers* at the time of purchase is what coffees they can expect will remain available for use with each system in the future."  ECF No. 68 at 3 (emphasis added).  In fact, no such language exists in Mr. Hyland's declaration, as the cited testimony relates solely to Kraft's *retail customers*, and does not even discuss Tassimo consumers.  *See* Ex. A. at ¶ 15.[3]  The unrebutted research suggests that other factors, including ████████████████████████████████ ████████████████████████████████████████████████  were the primary reasons that



---

[3]  Plaintiff further mischaracterizes the terms of August 2006 and July 2007 Tassimo Supply and License Agreements (ECF No. 68 at 6), which precluded Kraft from offering super-premium coffee other than Starbucks *in those channels specified in the agreements*, such as grocery, drug, mass merchant and club, but permitted super-premium coffees other than Starbucks to be offered in other channels, like specialty, department store, and direct-to-consumer at Tassimo.com.  Ex. A. ¶ 10; Ex. D at 33:11-44:8; 136:20-138:10.

consumers purchased Tassimo brewers.  By contrast, only a small number of consumers



.  As a result, Kraft's Brewbot marketing campaign from

Fall 2010 to 2011 emphasized the brewer's multi-functionality, and not particular coffee brands.

## IV.    Consumer T-Disc Purchases Show a Preference for Other Coffee Brands Over Starbucks

Plaintiff has alleged that she purchased a Tassimo brewer from a Michigan retailer for the

singular purpose of brewing single cups of Starbucks coffee in her home.  ECF No. 68 at 2.

Other proposed class members apparently did not share Plaintiff's idiosyncratic preference for

Starbucks, as Tassimo T-Disc sales data reflects that ███████████████████████████

██████████ T-Discs were Tassimo's top selling T-Disc SKU in both 2010 and 2011.  Ex. G

¶¶ 4-11.    Additionally, T-Disc sales by volume reveal that the majority of T-Disc sales during

the class period were for T-Disc brands other than Starbucks, Seattle's Best, and Tazo.  These

"non-Starbucks" brands represented approximately ██% of retail T-Disc sales (by volume) in

2010, and approximately ██% of retail T-Disc sales (by volume) in 2011.  Ex. G ¶ 5.

Moreover, in 2010, consumer T-Disc purchases reflected a preference for T-Disc brands

such as Gevalia and Maxwell House, over brands like Starbucks, Seattle's Best and Tazo T-

Discs brands.  In 2010, sales of Gevalia T-Disc products represented approximately ██% of

Tassimo's total retail and direct-to-consumer online sales (by volume), and sales of Maxwell

House T-Disc products represented approximately ██% of Tassimo's total U.S. retail and direct-

to-consumer online sales (by volume).  Ex. G ¶ 10.    By contrast, sales of Starbucks products

only represented approximately ██% of Tassimo's total retail and direct-to-consumer online

sales (by volume) in 2010.[4]  *Id.*  In 2010, sales of Seattle's Best T-Disc products represented

---

[4]   Plaintiff has argued without citation to any evidence or any basis in fact that "In 2010, Defendants' slowed and eventually cut off the supply of Starbucks T-cups [sic] to retailers and consumers."  ECF No. 68 at 4.  Indeed, Plaintiff's admitted ability to purchase a package of Starbucks T-Discs sometime *after* November 2011, suggests that the supply of Starbucks T-Discs was not depleted until late 2011 or early 2012, making it highly unlikely that Starbucks T-Disc supply was restricted as early as 2010.  Ex. H at 54:20-55:16 & 59:14-60:24.

█ % of total retail and direct-to-consumer online sales (by volume), and sales of Tazo T-Disc products represented fewer than █ % of total retail and direct-to-consumer online sales (by volume). *Id.* By 2011, the top █ T-Disc products sold at retail (by volume), did not include any Starbucks, Seattle's Best or Tazo products. Ex. G ¶ 7.

## V. Media Outlets Widely Reported Throughout The Class Period That the Kraft-Starbucks Relationship Was Ending and Starbucks T-Discs Would Be Unavailable

Throughout the class period numerous national media sources, Defendants' websites, and various social media websites widely reported information regarding the termination of the Kraft-Starbucks Tassimo partnership, the resulting unavailability of Starbucks T-Discs for Tassimo, and Starbucks' decision to partner with Keurig to offer Starbucks K-Cups in Fall 2011. As early as November 5, 2010, Fox Business and the Wall Street Journal published articles reporting on Starbucks' public statements concerning its plan to terminate its distribution agreements with Kraft and speculating about Starbucks' likely future partnership with Tassimo competitor Keurig. Exs. A ¶ 21 & I. On November 29, 2010, CNNMoney.com and Reuters published articles regarding Kraft's decision to seek arbitration of Starbucks' attempt to terminate its distribution agreement with Kraft. Exs. J & K. On December 6, 2010 the New York Times reported that Starbucks was planning to terminate its partnership with Kraft on March 1, 2011 and that the commercial dispute involved Tassimo. Ex. L. In January and February 2011, numerous news sources reported on the Kraft-Starbucks litigation and Kraft's attempts to block Starbucks' March 1, 2011 termination of its distribution agreements. Exs. M, N, O & P. In February and March 2011, numerous news sources reported on Starbucks' plans to terminate its Tassimo partnership and to supply K-Cups for Tassimo's competitor, Keurig. Exs. Q, R, S, T & U. On August 30, 2011, Bloomberg and the Wall Street Journal reported that Starbucks K-Cups for Keurig would be available for sales at retailers, including Wal-Mart and Target, beginning November 2011. Ex. V & W. Finally, on November 10, 2011, the Wall Street Journal reported on the "incredibly brisk" sales of Starbucks K-Cup at retailers. Ex. X. Additionally, Kraft and Starbucks issued press releases and posted messages on their company

websites throughout the class period to inform the public about developments in their commercial dispute, Starbucks' plans to terminate the Tassimo relationship effective March 1, 2011, and Starbucks' plans to partner with Keurig in Fall 2011. Exs. B ¶¶ 9-10, B-4, Y, Z, AA & BB. Comments on social media websites during the class period, such as comments posted on the Tassimo Community Board at (http://innercircle.tassimodirect.com/category/Forums/3) between November 3 and November 29, 2010 and comments posted on the Tassimo Facebook page from November 1 through November 29, 2010 indicate that as early as November 2010, consumers were aware that the Kraft-Starbucks partnership could be ending. Exs. A ¶ 22, A-7 & A-8. Any consumers who read the foregoing news articles, press releases, website announcements, or social media posts prior to their purchase of the Tassimo brewer would not have reasonably relied on any alleged representations on product packaging regarding the availability of Starbucks.

## ARGUMENT

## I.       The Proposed Class May Not Be Certified Because It Is Not Ascertainable

"The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." *In re OnStar Contract Litig.,* 278 F.R.D. 352, 373 (E.D. Mich. 2011); *Romberio v. Unumprovident Corp.,* 385 Fed.Appx. 423, 431, 2009 WL 87510 (6th Cir. 2009). The class definition should be based on objective criteria, so that class members may be identified without individualized fact finding. *Id..* The class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. *OnStar,* 278 F.R.D. at 373; *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 547-48 (6th Cir. 2012). Plaintiff has failed to meet her burden of showing her proposed class is ascertainable by demonstrating a reliable and administratively feasible method by which the class may be identified. The proposed class definition is so grossly overbroad that it includes *all* Tassimo purchasers, including people who could not have reasonably relied on the alleged misrepresentations and who never suffered an injury. Indeed, because the evidence shows that

10

many consumers were either not exposed to allegedly false and misleading packaging, did not rely on the packaging, or purchased Tassimo brewers for reasons *other than* Starbucks, Plaintiff cannot possibly offer *any* methodology to identify consumers with standing that will not require individualized inquiries.

### A.    Plaintiff cannot demonstrate a reliable administratively feasible method by which the class may be identified.

Plaintiff bears the burden of showing that the proposed class is ascertainable.  *See Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3rd Cir. 2013).  To satisfy this burden, Plaintiff must demonstrate that her purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership.  *Id.*  In this case, Plaintiff has failed to offer *any* methodology, let alone a reliable and administratively feasible method, by which class members can be identified.   Indeed Plaintiff has suggested no procedure by which class members can present evidence of their current residence, and information regarding the date and location of their purchase, *other than individualized inquiry*.

Plaintiff also has not identified any evidence that can be used to determine who is a class member,[5] or any evidence of the existence of company databases or records that show or could show whether individuals should be included in the proposed class.   Some courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails.   *See Marcus v. BMW of N. America, LLC,* 687 F.3d 583, 593 (3d Cir. 2012) (collecting cases).   Courts discourage self-identification through class member affidavit, because it deprives defendants of the due process right to raise individual challenges and defenses to claims.  *See, e.g., Carrera*, 727 F.3d at 307.  In *Carrera,*

---

[5]   If Plaintiff is indeed representative of a typical Tassimo consumer, as she claims to be, evidence of Tassimo brewer purchases is unlikely to be in the possession of the class members. Indeed, Plaintiff cannot find a receipt from her own brewer purchase, and had difficulty recalling the precise date she purchased the brewer, the price she paid for it, or even what the brewer packaging looked like.  Ex. H at 54:20-56:23, 76:2-77:15, 84:1-85:16.

the plaintiff alleged that Bayer falsely claimed that its One-A-Day WeightSmart product enhanced metabolism and sought to certify a class of *all* consumers who purchased the WeightSmart product in Florida.  727 F.3d 300, 304 (3d Cir. 2013).  The Third Circuit held that the evidence put forth by the plaintiff was insufficient to show that retailer records could be used to identify class members, and further held that the use of class member affidavits was not a sufficiently reliable method to satisfy ascertainability requirements.  *Id.* at 308-311.  Similarly, in *OnStar,* plaintiffs sought to certify a class of former OnStar subscribers who are current residents of California, Colorado, New York or West Virginia and subscribed for OnStar services used in vehicles purchased or leased primarily for personal purposes.  278 F.R.D. at 373.  The district court concluded that the proposed classes were unascertainable because the OnStar subscriber database did not contain information regarding proposed class members' current state of residence or whether the OnStar subscription was used in a vehicle purchased or leased primarily for business purposes, and because individualized inquiries would be required to determine that information. *Id.* at 373-74 & n.2.

Plaintiff's failure to offer a methodology is not surprising, because it is impossible to ascertain the class that Plaintiff has defined.  Even if Plaintiff were to identify company databases, records, or other evidence that can be used to identify consumers who *purchased* Tassimo brewers in Michigan, such records would not necessarily establish the consumer's residence at the time at purchase, or the consumer's current residence.  Furthermore, Plaintiff is incapable of suggesting a method to identify consumers who purchased brewers packaged in boxes displaying the Starbucks logo, as distinguished from consumers who purchased brewers in either the June 2011 box design (which did not display any Starbucks logos), or in one of the ▮▮▮▮▮ boxes at retail and in warehouses to which stickers were applied to cover the Starbucks logos.  Yet consumers who were never exposed to the allegedly deceptive packaging should clearly be excluded from the class.  In her Class Certification Motion, Plaintiff only asserts generally that "[d]etermin whether a particular person is a member of the class will not be

difficult," ECF No. 68 at 10, but such unsupported, conclusory statements are insufficient to satisfy Rule 23's prerequisite that the class be ascertainable.

     **B.**    **Plaintiff's proposed class definition is grossly overbroad and requires individual inquiries to identify class members with standing.**

Another key requirement of an ascertainable class is that it must be defined in such a way that anyone within it would have standing. The class description must be sufficiently definite to permit ascertainment of class members, and the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf. *See APB Assocs., Inc. v. Bronco's Saloon, Inc.,* No. 09-14959, 2013 WL 1789275 *18 (E.D. Mich. 2013) (proposed class definition was "imprecise and amorphous" and the class unascertainable because the definition included persons or entities without statutory standing); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006) (a class cannot be certified if it contains members who lack standing). For class actions proceeding under the Michigan Consumer Protection Act (MCPA), class members must have suffered actual injury to have standing to sue. *Zine v. Chrysler Corp.,* 236 Mich.App. 261, 289 (1999); *see also* M.C.L. § 445.911(3) (under the MCPA damages that may be recovered by class member are limited to "actual damages" caused by the violation). Plaintiff's proposed class is unascertainable because as defined it includes consumers without statutory standing under the MCPA who have not suffered an actual injury, either because they were never exposed to or cared about the alleged misrepresentation, or they never relied on the alleged misrepresentation and thus suffered no harm.

Other circuits have similarly held that a class is unascertainable if it includes consumers who were never exposed to or cared about the alleged misrepresentation. In *Oshana v. Coca-Cola Co.,* plaintiffs claimed that Coca-Cola misleadingly suggested that its fountain Diet Coke did not contain saccharin, and sought to certify *all* purchases of that drink. 472 F.3d 506 (7th Cir. 2006). The Seventh Circuit held that the class was unascertainable because it "could include millions who were not deceived [by the alleged misrepresentations] and thus have no grievance." *Id.* at 514. The court further observed that "[s]ome people may have bought fountain Diet Coke

13

*because* it contained saccharin, and some people may have bought fountain Diet Coke *even though* it had saccharin." *Id.* (emphasis in original). Moreover, the court observed, "[c]ountless members of Oshana's putative class could not show any damage, let alone damage proximately caused by Coke's alleged deception" and "Oshana's proposed class includes people who knew fountain Diet Coke contained saccharin and bought it anyway." *Id.*

Plaintiff's proposed class suffers from the same fatal flaws as those in *Oshana,* and other similar cases. This lawsuit is *not* the typical class action case involving a defective item, a product that caused identifiable physical harm, or a product that failed to perform as promised, like the class action in *In re Whirlpool Corp.,* 722 F.3d 838 (6th Cir. 2013). In such suit, it is relatively straightforward to identify the people who were harmed and define the class accordingly. Here, there is no allegation that Tassimo brewers caused any physical harm or that they did not brew coffee as one would reasonably expect.[6] Rather, this lawsuit is based on allegedly deceptive Starbucks logos found on some Tassimo packaging during the class period.

Yet the proposed class is not limited to the people who believed the Starbucks logo was deceptive, saw packaging displaying the logo, relied upon the logo on the packaging, or even cared about or liked Starbucks coffee. Rather, the proposed class consists of "[a]ll persons who are current Michigan residents and purchased a Tassimo brewer for personal use and not for resale, in Michigan, between November 1, 2010 and February 20, 2012." ECF No. 68 at 10. This proposed class of *all* consumers therefore includes a gamut of individuals who have no statutory standing because they never reasonably relied on the alleged misrepresentations and never suffered any harm, including the following consumers:

**1. <u>Consumers for whom the availability of Starbucks was not a purchasing factor</u>**

The proposed class is overbroad and indefinite because it includes consumers who bought the Tassimo for reasons unrelated to the Starbucks labeling. For example, as Kraft market research shows, many consumers purchased Tassimo brewers for reasons related to ██████████

---

[6] Indeed, at her deposition, Plaintiff admitted that "the machine is fine" . . . "I'd used it and there was nothing wrong with it." Ex. H at 113:16-19.

███████████████████████████████████████████████████████████

█████████████████. Ex. B ¶ 25.  Additionally, the proposed class includes consumers,

such as those identified in Kraft's June 2010 ██████████████████ Research Study,

who ████████████████████████████████████████████████████

████████. Ex. B ¶ 26.  Plaintiff has offered no proof, such as consumer surveys, expert

testimony, or other evidence, to rebut Kraft's consumer research, and thus fails to "affirmatively

demonstrate" compliance with Rule 23's prerequisite of ascertainability, as required by *Wal-

Mart*. 131 S.Ct. at 2551.   Finally, the proposed class includes those consumers who were never

exposed to the Starbucks logo on brewer packaging.  Ex. B ¶¶ 11-22.  All of these consumers

would not have relied on the availability of Starbucks, and would not have been deceived by the

product packaging, and therefore have not suffered any harm.  Yet they are indiscriminately

swept into Plaintiff's proposed class definition.[7]

### 2.  Consumers who knew that Starbucks T-Discs would be unavailable

The proposed class also impermissibly includes consumers who did not reasonably rely

on the allegedly misleading product packaging because they were already aware that Starbucks

T-Discs were unavailable for Tassimo when they purchased the product.   Michigan consumers

had access to numerous sources of information from which they could conclude that Starbucks

was unavailable for Tassimo.  For example a variety of news sources reported on the issue

between November 5, 2010 and November 10, 2011, *see e.g.,* Exs. I, J, K, L, M, N, O, P, Q, R,

S, T, U, V, W & X.   Additionally, the consumers may have seen press releases or

---

[7]  This Court recognized this very problem during the October 25, 2012 hearing on Defendants'
motion to dismiss, when asking Plaintiff's counsel: "How can you find that out, who's a member
of the class, without a hearing where the people have to come in here and show they're members
of the class?  I mean, it's not a class that is self-defining.  It's a class as to what's going on in the
individual purchaser's mind.  People might purchase this product and they don't give a toot
about Starbucks.  They might purchase this product to make coffee,  cappuccino, all those things
that this product is used for, and hot chocolate.  So how do you get a class without bringing, I
don't know how many people bought this, but say 10,000 people here to see if they belong to the
class?"  ECF No. 35 at 4:16-5:2.

announcements posted on the Defendants' websites, *see, e.g.* Exs. B-4, Y, Z, AA & BB,  or various social media websites in which the information was disclosed.  Exs. A ¶ 22, A-7 & A-8.  Additionally, a consumer purchasing a brewer in November 2011 or later could have been exposed to Keurig marketing promoting the availability of Starbucks K-Cups for Keurig brewers, that would have put the consumer on notice that Starbucks was unavailable for Tassimo.  *See* Ex. X (reporting on the brisk sale of Starbucks K-Cups at retailers).  Under Michigan law, where a person has the means to determine, and does determine, that a representation is not true, but nonetheless unreasonably relies on the false statement, there is no fraud and the person is not entitled to damages for misrepresentation.  *See MacDonald v. Thomas M. Cooley Law Sch.,* 724 F.3d 654, 663 (6th Cir. 2013); *Novak v. Nationwide Mut. Ins. Co.,* 235 Mich.App. 675, 690 599 N.W.2d 546, 554 (1999).  This subset of consumers who purchased Tassimo brewers with the knowledge that Starbucks was unavailable cannot show actual damages, and are therefore impermissibly swept into an overbroad class definition.

## II.     Plaintiff Cannot Demonstrate Commonality Because The Proposed Class Includes Consumers With Different Knowledge Who Purchased Products In Different Packaging For Different Reasons

Rule 23(a)(2)'s commonality requirement "ensure[s] that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class."  *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir. 1998).  As the Supreme Court made clear in *Wal-Mart,* Plaintiff must "demonstrate" that the court can resolve "*each one* of the claims in *one stroke.*" 131 S.Ct. 2551.  Here Plaintiff has not met her burden of providing evidence that there is a "common" question that can resolve all claims in "one stroke."

There are no questions common to the proposed class because the class definition seeks to include consumers who, for different reasons, purchased different products, for different prices, at different stores, with different statements on the packaging, and who were throughout the class period exposed to different information regarding the availability of Starbucks for

Tassimo.  Where, as here, the record establishes that no common representation or omission exists, and that the evidence of materiality and reliance required under the MCPA would vary from consumer to consumer, the use of a reasonable consumer standard is not even possible. *OnStar,* 278 F.R.D.  at 378 (*distinguishing Dix v. Am. Bankers Life Assur. Co. of Florida,* 429 Mich. 410, 418, 415 N.W.2d 2016 (1987)).  Commonality requires Plaintiff to demonstrate that the class members have suffered the same injury, not merely that they have all suffered violation of the same provision of law.  *Wal-Mart Stores, Inc.,* 131 S. Ct. 2551; *OnStar,* 278 F.R.D. at 374.  But some class members have not been harmed at all if they did not see or rely on the allegedly misleading statement, if they did not care about the availability of Starbucks, or if they otherwise understood that Starbucks was not available for the Tassimo brewers.

Plaintiff's proposed class is comprised of multiple subsets of consumers who purchased Tassimo brewers in at least four different types of packaging: some boxes prominently displaying Starbucks logos, other boxes eliminating the Starbucks logos, either with stickers or through a revised design.  Ex. B ¶¶ 3-22. Additionally, throughout the class period, information was widely disseminated to consumers through news media sources, company websites, and social networking websites, regarding the termination of the Kraft-Starbucks Tassimo partnership and Starbucks' new partnership with Keurig.  Exs. A-7, A-8, B-4, Y, Z, AA & BB.  Moreover, consumers purchasing brewers in November 2011 and later were likely exposed to Keurig marketing promoting the availability of Starbucks K-Cups.  Ex. X.  Based on the foregoing evidence, it would be impossible for this Court to apply "a reasonable consumer standard as to reliance class-wide because the putative class members received different disclosures, from different sources, at different times, and the disclosures changed over time." *OnStar*, 278 F.R.D. at 378.

Even assuming all consumers saw the same packaging and had no access to information regarding the termination of the Kraft-Starbucks partnership, commonality would still be lacking because not all consumers bought the brewer *because of* Starbucks, or even cared about Starbucks coffee being available.  As Kraft's consumer research and T-Discs sales data

17

demonstrate, consumers' reasons for purchasing a brewer varied greatly, and were often unrelated to Starbucks.  For example, consumer studies show that ███████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████  Ex. B ¶ 25.  Moreover, as T-Disc sales data reflects, ██████████████████████████████████████████████████

██████████.  Rather, T-Disc consumers showed a preference for Gevalia and Maxwell House, which together represented ██% of total T-Disc sales in 2010.  *See* Ex. G ¶ 10.  By contrast Starbucks represented only ██% of total T-Disc sales that year.  *Id.*  Indeed, some consumers do not even *like* the taste of Starbucks.  Exs. B ¶ 26 & B-14 at KFGI 00017142.  These types of dissimilarities among the consumers within the proposed class will require individual inquiries to resolve issues of materiality and reasonable reliance, and impede the Court's ability to identify a common contention that is capable of class-wide resolution.  More importantly, this evidence is unrebutted by Plaintiff, who has put forth no *proof* of commonality, but has merely pleaded it.  As the Supreme Court explained *Wal-Mart,* a plaintiff must be prepared to *prove* that there are *in fact* common questions of law or fact.  131 S.Ct. at 2551. Plaintiff has not come close to meeting that burden.

Plaintiff incorrectly states the law when she argues that individual reliance need not be proved in a class action under the MCPA. ECF No. 68 at 13.  First, as the court in *OnStar* concluded, in a case like this, it would be impossible for a court to apply a reasonable consumer standard as to reliance class-wide.  278 F.R.D. at  378.   Moreover, as the Supreme Court instructed in *Wal-Mart,* "the Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge, or modify any substantive right." 131 S.Ct at 2561.  Thus a Court may not certify a class if doing so would deprive a defendant of a statutory defense to which it would be entitled when defending an individual claim.  Reliance is understood to be an implicit element of the MCPA generally. *See Vandermale,* No. 253100, 2005 WL 1459610 *1 (Mich. App. Jun. 21 2005) (holding that reliance is an implicit element of the MCPA).  Moreover, *reasonable* reliance is an explicit element of claims under subsections (s) and (bb) of the MCPA.  M.C.L. § 445.903(1)(s) & (bb).

Likewise¸ materiality is an explicit element of claims under subsections (s), (bb), and (cc) of the MCPA.  M.C.L. § 445.903(1)(s), (bb), (cc).  Therefore, if an individual must prove reliance and/or materiality to state a claim under the MCPA, a court cannot deprive a defendant of a statutory defense by certifying a class under Rule 23 without requiring proof of individual reliance and materiality by each class member.  *See Wal-Mart,* 131 S.Ct. at 2561; *OnStar,*  278 F.R.D. at 378.

### III.   The Proposed Class May Not Be Maintained Under Rule 23(b)(3) Because Individual Issues Predominate Over Any Potential Common Issue

Class certification pursuant to Rule 23(b)(3) requires Plaintiff to establish that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).[8]  As the Supreme Court has explained, Rule 23(b)(3)'s predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).  Thus, even if this Court finds that Plaintiff could satisfy Rule 23(a)(2)'s commonality requirement, it cannot conclude that she has satisfied Rule 23(b)'s higher threshold requirement of "predominance," because individualized issues overwhelm any potential common issue.

In this case, as with many class actions under the MCPA, individual issues of damages will predominate over any common issue, because recovery of class members is limited to "actual damages," which is not well-suited to classwide calculation.   Last Term, the Supreme Court reiterated that a party seeking certification under Rule 23(b)(3) bears the burden of "establishing" "through evidentiary proof" "that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 1433 (2013).  If a Plaintiff fails to satisfy this burden she "cannot show Rule 23(b)(3) predominance: Questions of

---

[8]  Plaintiff is not seeking a Rule 23(b)(2) class for declaratory or injunctive relief, nor can she, as there is no evidence that Starbucks is currently being marketed for Tassimo.

individual damage calculations will inevitably overwhelm questions common to the class." *Comcast,* 133 S.Ct. at 1433.  Here Plaintiff falls far short of the standard established by *Comcast* because she does not offer *any* evidence, expert opinion, or even a basic methodology to calculate damages class-wide.   The entire class certification motion devotes only a single paragraph containing meaningless, conclusory boilerplate language about damages, including "No individualized calculations or determinations will be required and any damages that are found to exist will be applicable class-wide." ECF No. 68 at 16.   The evidence, however, suggests otherwise.

Throughout the class period, the members of the proposed class purchased various models of Tassimo brewer, the prices of which ranged between $█ and $█, depending on the model and whether the brewer was sold at the manufacturer-suggested retail price or a lower promotional price.  Ex. B ¶ 32.   Additionally, various retailers offered consumers mail-in-rebate offers ranging from $█ to $█ in value at various times throughout the class period.  *Id.*  Given the various brewer models sold during the class period, the wide price ranges, and the possibility that a consumer redeemed a rebate, it would be difficult to reconstruct the exact price a consumer paid for a brewer, let alone calculate, what -- if any  -- actual damages the consumer suffered, without individualized inquiries.

Plaintiff simplistically suggests that actual damages will be measured "[f]or all members of the putative class, [as] the difference between what was represented and what was received" and which Plaintiff defines as "the value of the ability to brew single servings of Starbucks' coffee in the convenience of their homes." ECF No. 68 at 16.  Because Plaintiff does not explain how such an inherently subjective calculation for each consumer could be measured or valued on a classwide basis, class certification is improper.  Calculating a consumer's "value of the ability to brew single servings of Starbucks coffee" would inevitably require this Court to make individualized determinations.  For some consumers, who do not enjoy the flavor profile of Starbucks coffee, that value would likely be zero.  For other consumers, who continued to use their brewers, even after Starbucks T-Discs became unavailable, the value would be some

amount less than what they paid for the brewer, and would vary depending on each consumer's idiosyncratic preferences and habits. Because of the individual inquiry required to establish a class member's actual damages, several district courts have held that certification of a damage class is inappropriate under the MCPA. *See, e.g., OnStar,* 278 F.R.D. at 382; *Peters v. Cars To Go, Inc.,* 184 F.R.D. 270, 278 (W.D. Mich. 1998) (declining to certify damage class because determination of actual damages under MCPA would require an individual analysis of each class member's credit circumstances); *Van Vels v. Premier Athl. Ctr. Of Plainfield, Inc.,* 182 F.R.D. 500, 509 (W. D. Mich. 1998) (same)

Nor does this case lend itself to a bifurcated determination on liability and damages under Fed. R. Civ. P. 23(c)(4). As previously discussed, *supra* at 16-18, individualized issues of consumer perception, materiality, and reliance will similarly require this Court to conduct mini-trials to determine each class member's exposure to packaging, marketing information, expectations, intended use of the product, and awareness at the time of purchase of the future availability of Starbucks. These individual issues of liability predominate over any potential common issue.

## IV. Plaintiffs' Claims Are Not Typical of the Claims of the Class

Rule 23(a)(3)'s typicality requirement "ensure[s] that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Broussard,* 155 F.3d at 340. A class representative must "possess the same interest and suffer the same injury as the class members," *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 156 (1982), such that the evidence needed to prove the named plaintiff's claim is probative of the others' claims. Here, Plaintiff's claim is not typical of the class because she holds extreme idiosyncratic views regarding Starbucks coffee that are not typical of Tassimo consumers or proposed class members. For example, Plaintiff does not "possess the same interest and suffer the same injury" as the proposed class members who purchased Tassimo brewers for reasons *other than* the availability of Starbucks, such as consumers who bought the brewer because of

21

recommendations from family, friends, and co-workers, or because of one of the brewer's unique features – such as the ability to brew seven types of beverages, the ability to brew specialty coffees, or the ability to brew Gevalia or Maxwell House coffee.  Additionally, she is not typical of the proposed class members who purchased a Tassimo brewer packaged in a box that eliminated the Starbucks logos, either with stickers or through a revised design.  Finally, she is not typical of the proposed class members who purchased a Tassimo brewer with the knowledge that Starbucks T-Discs were not available.  The proposed class definition encompasses many individuals who have no claim at all to the relief requested, or who would at a minimum face defenses unique to their individual claims.   Because Plaintiff cannot demonstrate that by proving her own claims she could necessarily prove the claims of other class members, she fails to demonstrate typicality. *Romberio,* 385 Fed.Appx. at 431.

## V.    Plaintiff Has Not Satisfied Her Burden of Proving She Will Fairly and Adequately Represent the Class

It is well-established that the party seeking class certification bears the burden of proof, and that Rule 23(a) contains four prerequisites, including adequacy of representation, "which must *all* be met before a class can be certified."  *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (emphasis in original).[9]   The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.  *Id.* at 1083.  Therefore, for the same reasons that Plaintiff cannot show that her claims are typical of the class, she also cannot show she will fairly and adequately represent the class.

---

[9]   Plaintiff has also failed to satisfy her burden under Fed. R. Civ. P. 23(a)(1) of proving numerosity.  Plaintiff has provided no evidence regarding the number of Michigan consumers who purchased Tassimo brewers during the class period, but instead relies on an optimistic and ultimately inaccurate national brewer sale *projections*, rather than actual sales data.  Moreover, Kraft has never conceded that Plaintiff's *current* class definition, which was first disclosed on October 1, 2013 and which abandons a national class, satisfies numerosity requirements.  Finally, contrary to Plaintiff's assertions, Mr. Provine's testimony establishes ████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. C at 83:2-85:24.

Additionally, Plaintiff has failed to satisfy her burden of showing that she had engaged the services of qualified counsel.  Rule 23(a) requires a finding that the named plaintiff's attorney is qualified, experienced, and capable of conducting class action litigation.  The Court must consider (i) the work counsel has done in the case; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in handling the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23 (g)(1)(A).  First, Plaintiff has not demonstrated that she has engaged the services of counsel that is experienced with class actions.  According to the Affidavit of Counsel Plaintiff provided in support of her Class Certification motion, attorney Timothy H. McCarthy has only been licensed to practice law for two years.  Mr. McCarthy appears to have no experience handling class actions or other complex litigation, and no experience handling the types of claims asserted in this action.  Furthermore, Mr. McCarthy also does not appear to have tried *any* case, let alone a class action case, to verdict.

Recognizing the problem, Mr. McCarthy has tried to mitigate his lack of experience by associating with Peter Macuga, of Macuga, Liddle & Dubin, P.C.  Mr. Macuga represents that he has filed, maintained, and brought to judgment or settlement many certified class actions, but he has not demonstrated what substantive role he played in that prior litigation, or indicated why that experience is relevant to this case.  Furthermore, when questioned about Mr. Macuga at her deposition, Plaintiff did not recognize his name, admitted she had never spoken to him about the case, and did not realize that Mr. Macuga was representing her in this litigation.  Ex. H at 16:3-16:19; 23:13-23:16.  Indeed, Plaintiff's confusion is not surprising, as throughout this litigation Mr. Macuga has played  a secondary role to Mr. McCarthy.  *See* Decl. of T. Myrianthopoulos ¶ 2.  Additionally, a court considering a motion for class certification must consider the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(iv).  Plaintiff has failed to make the necessary showing.  Neither Mr. McCarthy nor Mr. Macuga have produced any evidence regarding the resources available to prosecute this class action case, which will likely be significant should the action proceed to merits discovery.

**<u>CONCLUSION</u>**

For the foregoing reasons, Kraft respectfully requests that the Court deny Plaintiff's Class Certification Motion.

Dated:  December 20, 2013

Respectfully submitted,

KRAFT FOODS GROUP, INC., f/k/a/
KRAFT FOODS GLOBAL, INC.

By:   __s/Thalia L. Myrianthopoulos_____
         One of its attorneys

Dean N. Panos
Richard P. Steinken
Thalia L. Myrianthopoulos
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654
Phone: (312) 222-9350
Facsimile: (312) 527-0484

*Counsel for Kraft Foods Group, Inc.*
*f/k/a/ Kraft Foods Global, Inc.*