UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PAMELA MONTGOMERY, on behalf of
Herself and for the Benefit of All with the
Common or General Interest, Any Persons
Injured, and All Others Similarly Situated,

          Plaintiffs,

v.                                                                                          Case No. 1:12-CV-00149

KRAFT FOODS GLOBAL, INC.,                                  HON. GORDON J. QUIST
a Delaware Corporation; and
STARBUCKS CORPORATION,
a Washington Corporation,

          Defendants.
_____/

**OPINION REGARDING PLAINTIFF'S MOTION FOR
ATTORNEY'S FEES AND COSTS AND RELATED MOTIONS**

**BACKGROUND**

Plaintiff, Pamela Montgomery, filed a class action complaint in this case on February 20, 2012 against Defendants, Kraft Foods Global, Inc. and Starbucks Corporation, alleging state law claims for violation of the Michigan Consumer Protection Act (MCPA), M.C.L. § 445.901 *et seq.* and similarly worded state laws, innocent misrepresentation, breach of express and implied warranties and breach of contract.  Montgomery also asserted a federal claim of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125 *et seq.*  (Dkt. # 1.)  Montgomery, a Starbucks coffee drinker, alleged that she purchased a Kraft-Tassimo single serving coffee brewing system for approximately $100, for the purpose of brewing Starbucks coffee.  Montgomery alleged that from January 2010 until about November or 2011, Kraft and Starbucks disseminated false and misleading information designed to lead consumers to believe that Starbucks T-discs (the single-serve beverage component of the brewing system) would be available for a reasonable amount of time into the

future, although Defendants knew that their business relationship would soon be at an end. Montgomery further alleged that after she purchased her Tassimo, it became increasingly difficult and impossible to find Starbucks T-discs.

On May 10, 2012, Defendants filed separate motions to dismiss all of Montgomery's claims. (Dkt. ## 14, 16.) On September 24, 2012, after the motions to dismiss were fully briefed, the Court heard oral argument. On October 9, 2012, Montgomery filed a first amended class action complaint that, among other things, amended the proposed class definitions and deleted the Lanham Act claim. Defendants then renewed their motions to dismiss. On December 6, 2012, the Court issued an Opinion and Order granting in part and denying in part Defendants' motions to dismiss. (Dkt. ## 39, 40.) Specifically, the Court dismissed Montgomery's claims for breach of express and implied warranties, breach of contract, and violation of section 3(1)(h), (n), (p), (q), (t), (u), and (w) of the MCPA, leaving the alleged violation of section 3(1)(a), (c), (s), (bb), and (cc) of the MCPA as Montgomery's only viable claim.[1]

On February 28, 2013, the Court issued a Case Management Order that provided for an initial phase of discovery regarding class certification, ending on August 15, 2013, to be followed by a motion for class certification by Montgomery. (Dkt. # 51.) Thereafter, the parties engaged in class discovery and, after an extension of the class discovery and motion for class certification deadlines, Montgomery filed her motion for class certification on October 1, 2013. Following the completion of briefing on the motion for class certification, the Court heard oral argument, and on May 9, 2014, issued an Opinion and Order denying Montgomery's motion for class certification. (Dkt. ## 132, 133.) Montgomery did not appeal the denial of class certification. *See* Fed. R. Civ. P. 23(f).

---

[1] Montgomery abandoned her innocent misrepresentation claim by failing to address it in her response. (Dkt. # 39 at Page ID#424 n.2.)

The denial of class certification left Montgomery's individual claim under the MCPA—which would have provided Montgomery a maximum recovery of $250 in statutory damages had she prevailed at trial—as the only claim remaining in the case. On September 3, 2014, in light of minimal potential damages, the certainty that the amount of attorney fees that would be incurred to further litigate the case would dwarf any damages that Montgomery might recover, and the parties' inability to formulate a reasonable and economical plan to resolve the case, the Court issued an Order to Show Cause why the Court should not order Defendants to submit an offer of judgment to Montgomery in the amount of $250.00, plus costs and reasonable attorney fees as determined by the Court. (Dkt. # 144.) In response to the Order to Show Cause, Defendants made an offer of judgment to Montgomery on substantially the same terms outlined in the Order to Show Cause. On October 1, 2014, after further posturing, Montgomery accepted Defendants' offer of judgment, with the qualification that she was not waiving her right to appeal the Court's denial of class certification. (Dkt. # 150.)

In accordance with the briefing schedule issued by the Court, Montgomery has filed a motion for attorney's fees and costs. Montgomery has also filed several related motions. The motions are fully briefed and ready for decision.

## DISCUSSION

**I. Montgomery's Motions to Delay Ruling on Motion for Attorney Fees and Costs, to Compel Attorney Fee Records, and to Conduct an Evidentiary Hearing on Defendants' Objections**

After filing her motion for attorney's fees and costs, Montgomery filed three ancillary motions—a motion requesting the Court to delay ruling on Montgomery's request for attorney fees and costs pending the Court's review of Defendants' fee records, a motion to compel Defendants and their counsel to produce their attorney fee billing records, and a motion for an evidentiary hearing on Defendants' objections to Montgomery's request for fees and costs. The Court will deny all of these motions.

Montgomery filed her motion for attorney's fees on October 23, 2014. On November 17, 2014, after Defendants filed their response raising numerous objections to Montgomery's request, Montgomery filed a motion requesting the Court to delay ruling on her request for fees and costs until the Court reviewed Defendants' counsels' billing records to measure the legitimacy of Defendants' objections.[2] Montgomery argued that "[a]fter promising to forego the issue of Plaintiff's entitlement to attorney fees and costs under the MCPA to induce acceptance, Defendants now seek to 'have it both ways' by *opposing* Plaintiff's submission of documents supporting those reasonable fees and costs."[3] (Dkt. # 157 at Page ID#3231.) Subsequently, Montgomery served non-party subpoenas on Defendants' law firms pursuant to Rule 45 of the Federal Rules of Civil Procedure, requesting them to produce their billing entries and fee statements in relation to this case. (Dkt. # 159-2.) After the law firms objected to the subpoenas, Montgomery filed a motion to compel Defendants and their law firms to produce their billing records.

Montgomery's request for opposing counsel's billing information, while a first for this Court, is not unprecedented. As Montgomery notes, some courts have required a party opposing a fee

---

[2] Although docketed as a supplement to her motion for attorney's fees, Montgomery's request for a delay on the ruling is actually denominated as a separate motion.

[3] Montgomery noted that Defendants criticized her for failing to cite any legal authority supporting her request for an attorney's fee award of $174,786.50.51 for obtaining a $250 settlement or to even file a brief supporting her request. She also asserted that Defendants made a misleading argument that Montgomery's counsel included a single time entry for 36 hours of travel in one day (even though counsel's bill of costs reflected only 3.1 hours of flight time on that day), and that Defendants attempted to mislead the Court by attaching Montgomery's "class action" portion of her retention agreement with her counsel. (Dkt. # 157 at Page ID##3231–32.) Montgomery's contentions lack merit. As Defendants accurately noted, Montgomery did not submit a brief in support of her motion for attorney's fees and costs, as required by Local Rule 7.1(a) ("All motions, except those made during a hearing or trial, shall be accompanied by a supporting brief."). Defendants are thus absolutely correct that Montgomery failed to provide any legal authority, because she did not file a brief. Moreover, Defendants did not, as Montgomery suggests, agree to simply accept whatever fee amount Montgomery requested as reasonable. As for the 36-hour time entry, it is hard to see how Defendants' argument could be misleading when, in fact, Montgomery's counsel actually included a 36-hour entry for a single day in his billing records. Even if Defendants had not raised the issue, the Court (which Montgomery cannot claim should have known about the circumstances of her counsel's travel) would have raised the issue *sua sponte* in reviewing Montgomery's counsel's records for reasonableness. Finally, Defendants did not mislead the Court by attaching a copy of Montgomery's retainer agreement to their response. Montgomery stated in her motion that she agreed to an hourly rate of $350 "pursuant to a duly entered and executed hourly retainer agreement." (Dkt. # 152 at Page ID#3028.) Montgomery did not attach a copy of such "hourly retainer agreement" to her motion, nor did she attach a copy of such document to any of her numerous subsequent filings. Defendants submitted the retainer agreement—the only such agreement that has been presented to the Court—to show that Montgomery never agreed in writing to an hourly rate of $350.

4

request to produce its own counsel's billing records because such information might be probative of whether the time spent on the case by the party seeking fees was reasonably and necessarily spent on the case. *See Stastny v. S. Bell Tel. & Tel. Co.*, 77 F.R.D. 662, 663–64 (D.C.N.C. 1978) (requiring opposing counsel to provide information as to the number of hours each attorney spent on the case and on what matters the time was spent); *Chi. Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 1996 WL 66111, at *3 (N.D. Ill. Feb. 13, 1996) (noting that in an antitrust case "it is not an abuse of discretion to find that a defendant's costs and hours are irrelevant to the reasonableness of a plaintiff's claimed award," but allowing the plaintiffs to obtain the defendant's billing information because such information might provide the best available comparable standard to measure the reasonableness of the plaintiffs' fees); *Coalition to Save Our Children v. State Bd. of Educ.*, 143 F.R.D. 61, 64–65 (D. Del. 1992) (citing *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 587 (3d Cir. 1984), and noting that "[t]he Third Circuit Court of Appeals has recognized that evidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioner's fees and leaves questions of discovery on this issue to the informed discretion of the district court."). Montgomery also cites several cases from the Western District of Tennessee that allowed discovery of opposing counsel's fees. *See, e.g.*, *Pollard v. E.I. DuPont de Nemours & Co.*, No. 95-3010, 2004 WL 784489, at *3 (W.D. Tenn. Feb. 24, 2004) (concluding that the defendant's counsel's billing records could be relevant to the defendant's objections that the plaintiff's fee request included hours that were excessive, redundant, or unnecessary).

On the other hand, as Defendants note, several circuits, including the Seventh, Tenth, and Eleventh Circuits, have concluded that opposing counsel's fees are generally not relevant to a moving party's fee request. For example, in *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729 (7th Cir. 1978), the Seventh Circuit observed that opposing counsel's fees are not helpful in the determination of a fee petition because "a given case may have greater precedential value for one side than the other," and "a plaintiff's attorney, by pressing questionable claims and refusing to

5

settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim." *Id.* at 731. Similarly, in *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205 (11th Cir. 1983), the Eleventh Circuit stated: "The amount of hours that is needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically. The case may have far greater precedential value to one side than the other." *Id.* at 1208. In addition, both the Michigan Supreme Court and the Michigan Court of Appeals have indicated it is improper to consider the fees of opposing counsel to measure the reasonableness of the attorney fees incurred by the party seeking a fee award. *See Fletcher v. Bd. of Educ.*, 323 Mich. 343, 349, 35 N.W.2d 177, 180 (1948) ("The reasonableness of the charges for services by one attorney cannot be measured by what some other attorney would charge. There is no universal yardstick which can be used to measure the reasonableness of charges for services of all attorneys, comparing one with another." (internal quotation marks omitted)); *Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich. App. 292, 298, 463 N.W.2d 261, 264 (1990) (noting that "the reasonableness of charges for legal services performed by one attorney is not measured by what other attorneys would charge" and holding that "the trial court did not abuse it discretion in refusing to permit the discovery of defendants' attorneys' time records and hourly rates").

Regardless of whether opposing counsel's billing statements and fees can ever be an appropriate consideration in an attorney's fee dispute, Montgomery is not entitled to such information in this case because she has failed to show how it could be relevant to the specific objections Defendants have raised. Defendants' objections concern matters such as the sufficiency and accuracy of Montgomery's counsel's billing records, Montgomery's request for fees related to class discovery and class certification (which the Court denied) and claims that were dismissed, and the reasonableness of Montgomery's counsel's proposed rate of $350 for a sole practitioner in Lansing in his first year of practice. Defendants are not arguing that Montgomery's counsel spent

6

too much time on a particular task, for which their counsels' billing records could arguably be relevant. In light of Defendants' objections, their counsels' billing records cannot assist the Court in determining whether Montgomery is entitled to fees incurred in connection with her class action allegations and unsuccessful claims, whether Montgomery's counsel's billing records and descriptions of the work performed are too inaccurate or insufficient to enable the Court to determine whether the work performed was reasonable, and whether Montgomery has failed to show that her counsel's requested hourly rate is reasonable for an attorney with similar experience, in a similar locale, and in similar circumstances. Moreover, the United States Supreme Court has stated that the determination of a reasonable attorney's fee "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941 (1983). As recognized in the Court's September 3, 2015 Order to Show Cause, Defendants' offer of judgment was not an admission that Defendants had no defense to Montgomery's MCPA claim, but instead was a means to end a case that could no longer be economically justified and that could serve only to unnecessarily generate additional attorney fees. It would be ironic, indeed, if the Court were to allow Montgomery's requested discovery in these circumstances, thereby resulting in increased fees.

Montgomery has also moved for an evidentiary hearing on Defendants' objections. In *Smith v. Khouri*, 481 Mich. 519, 751 N.W.2d 472 (2008), the Michigan Supreme Court held that "[i]f a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence." *Id.* at 532, 751 N.W.2d at 480. In the instant case, Defendants, who are the "part[ies] opposing the fee request," have not requested a hearing. Moreover, a court has discretion whether to hold an evidentiary hearing. *John J. Fannon Co. v. Fannon Prods., LLC*, 269 Mich. App. 162, 171, 712 N.W.2d 731, 737 (2005). "If the trial court has sufficient evidence to determine the amount of attorney fees and costs, an evidentiary hearing is not required." *Id.* In spite of Montgomery's insistence that a hearing is required to allow

7

her counsel to address Defendants' objections, the Court concludes that an evidentiary hearing is not warranted because the materials that the parties presented are sufficient to allow the Court to determine a reasonable fee award.

## II.   Montgomery's Motion for Attorney's Fees and Costs

### A.   Attorney's Fees

Pursuant to the MCPA, a plaintiff that prevails on a claim under the MCPA is entitled to recover her "reasonable attorneys' fees." M.C.L. § 445.911(2). Montgomery requests that the Court award her attorney's fees in the amount of $174,786 through October 2, 1014, based on 499.39 hours of work performed at an hourly rate of $350. In addition, Montgomery has submitted a supplemental fee request in the amount of $8,382.50 for 23.95 hours of work that her counsel performed after accepting the offer of judgment.

The burden of establishing the reasonableness of attorney fees is on the party requesting them. *Reed v. Reed*, 265 Mich. App. 131, 165–66, 693 N.W.2d 825, 846 (2005). "[T]here exists no precise formula by which a court may assess the reasonableness of an attorney fee." *In re Temple Marital Trust*, 278 Mich. App. 122, 138, 748 N.W.2d 265, 274 (2008) (per curiam). However, the Michigan Supreme Court has noted that courts may consider the following factors from *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W.2d 217, 222 (1973), in computing reasonable attorney fees: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *See Wood v. Detroit Auto. Inter-Ins. Exch.*, 413 Mich. 573, 588, 321 N.W.2d 653, 661 (1982). Subsequently, in *Smith*, *supra*, the court observed that trial courts have also applied the factors listed in Rule 1.5(a) of the Michigan Rules of Professional conduct in assessing reasonable attorney's fees. *Id.* at 529, 751 N.W.2d at 479. Those factors, which overlap with the *Crawley* factors, include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Id.* at 530, 751 N.W.2d at 479 (quoting MRPC 1.5(a)).

In applying the factors listed above,

a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5(a) and factor 2 under [*Crawley*]). The number produced by this calculation should serve as the starting point for calculating a reasonable fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining [*Crawley*]/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors.

*Id.* at 530–31, 751 N.W.2d at 479–80. A reasonable fee should be proportionate to the results obtained. *Augustine v. Allstate Ins. Co.*, 292 Mich. App. 408, 437, 807 N.W.2d 77, 94 (2011).

### *Customary Fee*

Montgomery contends that she is entitled to fees "based upon an agreed hourly rate of $350.00 per hour," but she has submitted no proof that she actually agreed to pay her counsel, Mr. McCarthy, $350 per hour for his services in this case. Moreover, Montgomery has offered no evidence concerning McCarthy's experience, reputation, or ability as an attorney. In his declaration,

9

McCarthy states that a rate of $350 is reasonable because it is commensurate with the rate charged by Michigan solo practitioners in the 95th percentile, as set forth in the State Bar of Michigan's 2014 Economics of Law Practice Survey attached to his declaration. (Dkt. # 154 at Page ID#3094; Dkt. # 154-1.) However, McCarthy fails to give any reason why the Court should apply the rate for the 95th percentile of solo practitioners.

Defendants, on the other hand, contend that an appropriate hourly rate for Mr. McCarthy's work in this case is $110 per hour, based on various hourly rate considerations addressed in the State Bar of Michigan's 2011 Economics of Law Practice Survey. (Dkt. # 156-6.) Defendants note that, at the time Mr. McCarthy began his work on this case, he had been a licensed attorney for less than eight months, that Mr. McCarthy practices law in Lansing, and that Mr. McCarthy is a solo practitioner working out of a home office.[4] According to the 2011 survey, for attorneys in their first year of practice, hourly rates were $125 for the 25th percentile, $190 for the 75th percentile, and $200 for the 95th percentile. The mean rate for first year attorneys was $154. For solo practitioners, hourly rates were $150 for the 25th percentile, $200 for the 75th percentile, and $300 for the 95th percentile, with a mean rate of $180. The survey also shows that the mean rate for attorneys in the Lansing area was 6.4% lower than the mean rate for all private practitioners. Defendants arrive at a rate of $110 by starting with the mean rate for solo practitioners of $180, applying the difference in the mean rates for first year attorneys and all attorneys (65.2%), and applying the difference in mean rates for Lansing attorneys (93.6%) to arrive at approximately $110.

Michigan courts have held that surveys such as those produced by the State Bar of Michigan are appropriate sources for determining reasonable hourly rates in fee cases. *Smith*, 481 Mich. at

---

[4] There is no evidence in the record indicating whether Mr. McCarthy actually works out of his home or whether he has an office outside of his home. The rates in the 2011 survey for solo practitioners vary based on whether the attorney has an office outside the home, practices from the home, or shares space (presumably outside the home), with attorneys working out of a home office charging the least. The differences in rates are not material to the Court's analysis of a reasonable hourly rate.

10

531–32, 751 N.W.2d at 480.  In this case, the 2011 survey provides the most relevant data, as McCarthy performed much of the work at issue in 2011.  Based on its review of the pertinent information submitted by the parties, the Court concludes that $155 per hour is a reasonable rate for the work performed in this case.  The Court rejects McCarthy's proposed rate of $350 because McCarthy has failed to show that the circumstances warrant it.  As Defendants note, McCarthy took this case as a first year solo practitioner in Lansing.  As such, his proposed rate is significantly more than the mean rates for first year attorneys, solo practitioners, and attorneys in Lansing, and McCarthy has shown no reason for such a significant departure from those rates.  Moreover, this was not a complex case.  Montgomery's MCPA claim was relatively straightforward and could have been handled by any attorney without any particular specialized experience.  On the other hand, the Court concludes that Defendants' proposed hourly rate of $110 is too low, being 12% less than the rate for first year attorneys in the 25th percentile and about 27% less than the rate for sole practitioners in the 25th percentile.  A rate of $155 per hour, which was approximately the mean rate for first year attorneys, is an adequate rate to compensate McCarthy for the work performed in this case.

### *Reasonable Number of Hours*

As noted, Montgomery requests a fee award for 499.39 hours of work through the date of her motion for attorney's fees, and for 23.95 hours of work that McCarthy performed after the motion was filed.  Defendants have categorized the 499.39 hours of work as follows: 1) pre-complaint research:  9.90 hours; 2) preparation of the complaint: 38.10 hours; 3) responding to the motions to dismiss:  41.00 hours[5]; 3) initial discovery/case management: 16.40 hours; 4)

---

[5] This figure includes 17.5 hours that McCarthy billed in June of 2013 regarding the motions to dismiss—at least six months after Montgomery had filed her responses and after the Court issued its ruling on the Motions.  McCarthy claims that he made a mistake on his billing entries, which should have read 2012 rather than 2013.  (Dkt. # 161-1 at Page ID#3328.)  But that explanation is unavailing because even if the billing entries read 2012, they would still be inaccurate.  The work described in most of those entries pertained to Defendants' renewed motions to dismiss, which were not filed until October of 2012.  (Dkt. ## 33, 34.)

miscellaneous: 3.36 hours; 5) phase I/class certification discovery: 240.78 hours; 6) processing of phase I/class certification data: 71.95 hours; 7) class certification: 18.10 hours; and 8) post-class certification ruling: 59.80 hours. (Dkt. # 156-7.) Having compared Defendants' summary exhibit to McCarthy's billing statements, the Court finds it accurate.

Initially, the Court notes that Montgomery's request for 499.39 hours is unreasonable on its face because it includes 330.83 hours for work spent on class discovery and class certification issues. Montgomery states that the hours she requests are "exclusive of work related to Plaintiffs' Request for Class Certification," (dkt. # 152 at Page ID#3028), but even a cursory review of McCarthy's billing records shows that this is not true. The billing entries describe work that pertained exclusively to class certification issues, for example, depositions of representatives from Walmart and Target—stores from which Montgomery did not purchase her Tassimo. To the extent Montgomery is arguing that she should be awarded fees for work that McCarthy performed during the class discovery period through the date the Court denied class certification because such work also supports her individual MCPA claim, her argument ignores the reality that this case was largely, if not exclusively, driven by Montgomery's request for class certification, which the Court rejected. Absent such allegations, Montgomery's individual claim, involving at most $250 in damages, likely would have made it no further than the complaint stage and certainly would not have been within this Court's jurisdiction.[6] Moreover, any suggestion that it would be reasonable to spend $174,786.50 (at $350 per hour), or even $79,902.40 (at $160 per hour), to recover $250 is patently absurd.[7] Accordingly, the 330.83 hours incurred during class discovery through the denial of class certification will be excluded from reasonable hours calculation.

---

[6] The Court recognizes that Montgomery included a Lanham Act claim in her complaint which theoretically would have invoked federal question jurisdiction but, as Defendants demonstrated in their motions to dismiss, such claim was frivolous.

[7] To the extent McCarthy engaged in merits discovery following entry of the February 8, 2013 Case Management Order, he did so in violation of the Case Management Order, which limited discovery to class certification issues.

Regarding the 9.90 hours that McCarthy spent on pre-complaint research, Defendants contend that this time should be reduced by 50% to reflect Montgomery's lack of success on her claims. The Court concludes that a reduction is appropriate, but concludes that this time should be reduced to 4 hours to reflect the simplicity of the case as an individual claim under the MCPA. Moreover, McCarthy's entries for much of this time, e.g., "Compile and Research Industry Reports, Data; Chronology Rev.", provide little detail about how such work related to Montgomery's successful MCPA claim, as opposed to her unsuccessful class allegations or dismissed warranty or Lanham Act claims.

Defendants also contend that the 38.10 hours that McCarthy spent on drafting the complaint should be reduced by 50%, again to account for Montgomery's lack of success. Considering that the vast majority of the allegations and claims in the complaint relate to the proposed classes or to claims that were dismissed, the Court concludes that 10 hours would have been a reasonable amount of time to draft a complaint that complied with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) for a "short and plain statement of the claim." This would have entailed no more than the basic allegations of Montgomery's purchase of her Tassimo and the pertinent MCPA violations.[8] For similar reasons, Defendants contend that the hours McCarthy spent on the responses to the motions to dismiss should be reduced by 50%, after deducting the 17.5 hours billed in 2013. Regardless of whether such hours are considered, the Court concludes that the hours McCarthy spent responding to the motions to dismiss should be limited to 10 hours because of Montgomery's minimal success in defending the motions. In other words, 10 hours would have been a reasonable amount of time to respond to Defendants' arguments pertaining to Montgomery's MCPA claim.

Defendants do not propose a reduction of the 16.4 hours spent on initial discovery/case

---

[8] For example, footnote number 1 of the class action complaint cited similar consumer protection laws from most, if not all, of the states other than Michigan, paragraphs 20 through 31 pertained solely to the proposed classes, and paragraphs 36–39, 41, 42, and 45–64 pertained solely to claims that were dismissed. None of this had any bearing on Montgomery's individual MCPA claim.

13

management.  Accordingly, those hours will be allowed.  However, the 3.36 hours of time spent on miscellaneous matters, described only as "Gilman Law 03212" and "Judicial Estoppel Argument 712/2014 12:34 PM," will be denied because Montgomery has failed to show how those hours related to any issue in the case.  The description of "Gilman Law 03212" is simply too vague for the Court to conclude that it furthered Montgomery's individual MCPA claim, and the issue of judicial estoppel was never raised by any party, at least in this Court's recollection.

Defendants also contend that the Court should exclude all of the 59.80 hours that McCarthy spent on the case following the denial of class certification because such work did not contribute materially to the resolution of Montgomery's claims.  The Court agrees, for the most part.  Following the denial of class certification and Montgomery's decision not to file a petition to appeal that denial, it should have been immediately apparent to Montgomery and McCarthy that continuing the litigation on Montgomery's individual claim made no sense.  That claim could have likely been settled for statutory damages and a reasonable attorney fee (or an agreement for the Court to determine a reasonable fee) with one or two phone calls between counsel.  Had McCarthy taken this route, the case could have been resolved much sooner and without the need for almost 60 hours of additional time by McCarthy, which did nothing to resolve the case and appears to have been spent solely on posturing on the issue of attorney's fees.  Accordingly, the Court concludes that one hour would have been more than reasonable for McCarthy to resolve the case after denial of class certification.

Citing *Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir. 1986), Montgomery seeks an additional 23.95 hours for work that McCarthy performed for post-offer of judgment matters, including review of his billing entries, drafting the motion for attorney's fees, researching legal issues, and other matters.  In *Coulter*, the Sixth Circuit stated, "[i]n the absence of unusual circumstances, the hours allowed in preparing and litigating the attorney fee case should not exceed

14

3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary." *Id.* at 151. Montgomery's reliance on *Coulter* is misplaced. The plaintiff in *Coulter* prevailed on the issue of liability after the district judge ruled in her favor, and the parties then litigated the issue of attorney fees. *Id.* at 148. In contrast to *Coulter*, Montgomery did not receive a favorable judicial ruling. Instead, Defendants made an offer of judgment that included "reasonable attorneys' fees and costs actually incurred and attributable to the prosecution of Plaintiff's individual claims." (Dkt. # 146-1 at Page ID#2992.) Thus, by its terms, Defendants' offer of judgment was limited to fees that advanced the prosecution of Montgomery's individual claims. The hours that McCarthy incurred after Montgomery accepted the offer of judgment were not attributable to the prosecution of Montgomery's claims. In *Grissom v. The Mills Corp.*, 549 F.3d 313 (4th Cir. 2008), the Fourth Circuit rejected the plaintiff's claim to post-offer fees, noting that "when the language upon which Plaintiff relies is read, as it should be, in conjunction with Rule 68, it is clear that the reference to 'the issue of attorneys' fees and costs' pertains only to attorneys' fees and costs accrued as of the date of the Defendant's Rule 68 Offer of Judgment." *Id.* at 320; *see also Hanover Grove Consumer Hous. Coop. v. Berkadia Commercial Mort., LLC*, No. 13-13553, 2014 WL 1461399, at *2 (E.D. Mich. Apr. 15, 2014) (holding that under *Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003), "where an offer of judgment has been made under Rule 68, the only attorneys' fees that are reasonably incurred are those incurred before the judgment" (internal quotation marks omitted)). Accordingly, Montgomery's request for post-offer fees will be denied.

In sum, the Court concludes that the number hours reasonably spent on Montgomery's individual MCPA claim is 41.4.

### Other Factors

The reasonable hourly rate multiplied by the number of reasonable hours results in a fee of $6,417 for Montgomery's recovery of $250 in statutory damages.

Considering the remaining *Crawley*/MRPC 1.5(a) factors, the Court does not find any basis to adjust the fee up or down.  Montgomery does not present any specific argument with regard to these factors, except McCarthy's assertion that his work on the case limited his availability to accept other work.  (Dkt. # 153 at Page ID#3072.)  While that might have been true while McCarthy was involved in class discovery and related matters, the fee at issue does not deal with class issues.  There is no reason to believe that 41.4 hours of time spent on Montgomery's individual claim would have precluded McCarthy from accepting other work.

To the extent other factors are relevant, such as the amount in question and the results achieved, or the difficulty of the case, the Court has considered those issues as part of the determination of a reasonable hourly rate.  Because a fee of $6,417 is proportionate to the amount recovered and Montgomery's success in this case, no adjustment will be made.[9]

**B.     Costs**

Montgomery also seeks costs in the amount of $5,183.56, consisting of a filing fee of $400 and court reporting and deposition transcript fees in the amount of $4,783.56.  After she filed her motion for costs and attorney's fees, Montgomery filed a supplemental request for costs for an additional $3237.45 in costs consisting of travel expenses.  (Dkt. # 155-1.)

The MCPA does not address costs.  The general costs statute, 28 U.S.C. § 1920, sets forth the types of costs that a court may tax against the losing party.  *Citizens Against Pollution v. Ohio Power Co.*, 484 F. Supp. 2d 800, 815 (S.D. Ohio 2007).  The statute provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1)  Fees of the clerk and marshal;

---

[9] The Court notes that an additional reduction based on McCarthy's failure to keep contemporaneous and accurate time records might be warranted in this case.  *Olson v. Olson*, 256 Mich. App. 619, 636, 671 N.W.2d 64, 74 (2003) ("While such [contemporaneous billing] records are not required to be kept, in demanding a large sum of attorney fees the lack of contemporaneous time records leaves room for doubt regarding the reasonableness of the hours expended." (quoting *Howard v. Canteen Corp.*, 192 Mich. App. 427, 437–38, 481 N.W.2d 718, 725–26 (1991) (per curiam), *ovverruled on other grounds by Rafferty v. Markovitz*, 461 Mich. 265, 602 N.W.2d 367 (1999)).  However, the Court declines to apply such a reduction in light of the other reductions made to Montgomery's claimed hours.

  (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

  (3) Fees and disbursements for printing and witnesses;

  (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

  (5) Docket fees under section 1923 of this title;

  (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The filing fee that Montgomery paid may be taxed as costs against Defendants pursuant to § 1920(1). However, Montgomery paid a filing fee of $350, not $400. As for the remaining amounts, Montgomery has failed to show that they are recoverable as costs. Those amounts are for depositions that were taken during the class discovery period. Because Montgomery did not prevail on class certification, and Defendants therefore did not lose on the issue, those amounts were not "necessarily obtained for use in the case." 28 U.S.C. § 1920(2).[10] Accordingly, the Court will award Montgomery $350 in costs.

### CONCLUSION

For the foregoing reasons, the Court will deny Montgomery's motions to delay ruling on Montgomery's motion for attorney's fees and costs, to compel attorney fee records, and to conduct an evidentiary hearing on Defendants' objections. The Court will grant Montgomery's motion for attorney's fees and costs in part and award her $6,417 in attorney's fees and $350 in costs.

An Order consistent with this Opinion will enter.

Dated: March 2, 2015               /s/ Gordon J. Quist
                            GORDON J. QUIST
                            UNITED STATES DISTRICT JUDGE

---

[10] Aside from the fact that Montgomery did not prevail on class certification, the amounts Montgomery requests for McCarthy's travel expenses may not be reimbursed as costs under § 1920 because they are not listed in that statute. *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (per curiam).